MELANIE L. PROCTOR
Assistant Chief Counsel (#228971)
melanie.proctor@dfeh.ca.gov
JENNIFER H. SPERLING (#310551)
Associate Chief Counsel
jennifer.sperling@dfeh.ca.gov
MATTHEW TURNBULL
Staff Counsel (#307271)
matthew.turnbull@dfeh.ca.gov
DEPARTMENT OF FAIR EMPLOYMENT
 AND HOUSING
2218 Kausen Drive, Suite 100
Elk Grove, CA 95758
Telephone: (916) 478-7251
Facsimile: (888) 382-5293

Attorneys for Plaintiff,
Department of Fair Employment and Housing

T. Scott Belden, SBN 184387
*scott@bbr.law*
Jazmine Flores, SBN 317038
*jazmine@bbr.law*
Misty B. Franklin, SBN 337615
*misty@bbr.law*
BELDEN BLAINE RAYTIS, LLP
5016 California Avenue, Suite 3
Bakersfield, California 93309
Telephone: (661) 864-7826
Facsimile: (661) 878-9797

Attorneys for Defendant
GRIMMWAY ENTERPRISES, INC.,
d.b.a. GRIMMWAY FARMS

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING, an agency of the State of California,<br><br>Plaintiff,<br><br>vs.<br><br>GRIMMWAY ENTERPRISES, INC., d.b.a. GRIMMWAY FARMS,<br><br>Defendants. | Case No.: 2:21-cv-01552-KJM-AC<br><br>**STIPULATED ESI AND DOCUMENT PRODUCTION PROTOCOL AND [PROPOSED] ORDER**<br><br>Assigned to Honorable Kimberly J. Mueller<br><br>Complaint Filed: August 30, 2021<br>Trial Date: None |

Plaintiff Department of Fair Employment and Housing ("DFEH") and Defendant Grimmway Enterprises, Inc., d.b.a., Grimmway Farms ("Grimmway") (each a Party, and together, the "Parties") jointly submit this stipulated ESI and document production protocol and proposed order in the above-captioned action (the "Litigation").

The procedures and protocols outlined herein govern the production of electronically stored information and paper documents by the Parties during the pendency of this Litigation. The production formats for any other materials, including the materials exchanged between the parties pre-litigation, will be addressed by the parties after a meet and confer regarding the specific item or category of items.

**A.     Duty of Cooperation**

The Parties acknowledge their duty to work together cooperatively throughout the discovery process.

**B.     Definitions**

1. **"Custodian"** means an individual who has possession, custody, or control of documents or information related to this Litigation.

2. **"Custodial Data Source"** means any source of Documents, Electronic Documents or Data, or ESI kept by a particular Custodian, including, without limitation, local hard drives, network home or personal file shares, removable storage, email, removable storage media, on-line data storage such as Dropbox or Google Drive, messaging applications, phones, tablets, social media, and physical files.

3. **"Confidentiality Designation"** means the legend affixed to Documents for Confidential Discovery Information as defined by, and subject to, the terms of the Parties' Stipulated Protective Order in this Litigation.

4. **"Defendants"** means and refers to the named defendant(s) in the above-captioned matter, as well as any later added defendants.

5. **"Document"** is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure. The term "Document" shall include Hard-Copy Documents, Electronic Documents, and ESI as defined herein.

///

6. "**Electronic Document or Data**" means Documents or Data existing in electronic form at the time of collection, including but not limited to: e-mail or other means of electronic communications, word processing files (e.g., Microsoft Word), computer presentations (e.g., PowerPoint files), spreadsheets (e.g., Excel), and image files (e.g., jpg).

7. "**Electronically stored information**" or "**ESI**," as used herein has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

8. "**Hard-Copy Document**" means Documents existing in paper form at the time of collection.

9. "**Native Format**" means and refers to the format of ESI in which it was generated and/or as used by the producing party in the usual course of its business and in its regularly conducted activities. For example, the native format of an Excel workbook is a .xls or .xslx file.

10. "**Metadata**" means: (i) structured, i.e., fielded, information embedded in a native file which describes, *inter alia,* the characteristics, origins, usage, and/or validity of the electronic file; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system, (iii) information, such as Bates numbers, created during the course of processing documents or ESI for production, and (iv) information collected during the course of collecting documents or ESI, such as the name of the media device, or the Custodial or Non-Custodial data source from which it was collected.

11. "**Media**" means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

12. "**Non-Custodial Data**" means any source of Documents, Electronic Documents or Data, or ESI not kept or maintained by any particular Custodian, including without limitation, databases, file servers, SANs, NASs, email servers, web servers, on line data stores such as Dropbox, Box and Google Drive, on line email systems such as Google Mail, communication or coordination platforms such as Slack, document management systems (DMS), record management systems (RMS), content management systems (CMS), departmental/project/collaborative/shared storage spaces, e-rooms, structured data stores, application data, source code repositories, social media, source code repositories,

and hard-copy document repositories. Information that serves to identify or locate such material, such as file inventories, file folders, indices, and metadata, are also included in this definition.

13. "**Optical Character Recognition**" or "**OCR**" means the process of recognizing, and creating a file containing, visible text within an image.

14. "**And**" and "**or**" shall be construed conjunctively or disjunctively as necessary to make their use inclusive rather than exclusive, e.g., "**and**" shall be construed to mean "**and/or**".

15. "**Social Media**" means all means of communicating or posting information or content of any sort on the Internet, including but not limited to Facebook, Twitter, Youtube, or any "blog" or web journal.

16. "**Include**" and "**Including**" shall be construed to mean "include but not be limited to" and "including, but not limited to,".

17. Reference to the singular shall also be deemed to refer to the plural, and vice-versa.

**C.    Preservation**

1. The Parties represent that they have issued litigation hold notices to those Custodians with data, and persons or entities responsible for maintenance of Non-Custodial data, which possibly contain discoverable information, and have established procedures to ensure that those notices have been received, understood and appropriately acted upon.

2. All backup, disaster recovery or archive media which may contain discoverable ESI that is not otherwise available are being preserved.

3. All processes and procedures which would result in the elimination, or transfer to a less accessible medium, of any unpreserved data and associated metadata which would otherwise be required to be preserved or produced have been suspended.

4. Within thirty (30) days from entry of this Order, and thereafter as necessary, the Parties will meet and confer about all Documents, Electronic Documents and Data, and ESI preservation systems, including back-up, archive and disaster recovery systems, including those related to the deletion, removal or transfer of data from a system or location, that possibly contain discoverable information and methods to search these Data Sources in order to identify Documents, Electronic Documents and Data, and ESI that is subject to production in discovery and filter out Documents,

Electronic Documents and Data, and ESI that is not subject to discovery. Nothing in this section waives either Parties' right to seek this or related information through discovery, including through Federal Rule of Civil Procedure 30(b)(6).

**D.     Disclosure of Document and Data Sources**

18.     Within thirty (30) days from entry of this Order, and thereafter as necessary, the Parties will meet and confer about all Custodial and Non-Custodial Data Sources which possibly contain discoverable information and methods to search these Data Sources in order to identify Documents, Electronic Documents and Data, and ESI that is subject to production in discovery and filter out Documents, Electronic Documents and Data, and ESI that are not subject to discovery.  Nothing in this section waives either Parties' right to seek this or related information through discovery, including through Federal Rule of Civil Procedure 30(b)(6).

**E.     Parties' Identification and Classification of Documents and ESI**

The Parties shall meet and confer with respect to the methodologies used by the Parties for identification and classification of documents and ESI, including technology assisted review ("TAR") and/or use of search terms.

**F.     Documents with Insufficient Text**

Documents that are reasonably believed to be responsive and for which text-based search technologies are fundamentally ineffective, such as images, spreadsheets, etc., must be reviewed without culling by search terms, predictive coding, or other technologies that rely primarily on text.

**G.     Social Media**

Recognizing that access to Social Media ESI may be limited by the provider of Social Media platforms, and that such access can change rapidly with no notice to Parties, the Parties shall meet and confer as to the collection and formats of production of responsive Social Media ESI, if any.  Social Media does not include a Party's own website such as Grimmway.com.

///
///
///
///

**H.     Additional or Alternate Methodologies for Documents from Certain Custodians and Non-Custodial Data Sources.**

Upon request, the Parties will meet and confer to address the need for and implementation of additional or alternate methodologies for identifying possibly responsive documents from Custodial and Non-Custodial Data Sources that may warrant such treatment.

**I.     Mobile and Handheld Device Documents and Data.**

If responsive data that can reasonably be extracted and produced in the formats described herein is identified on a mobile or handheld device, that data shall be produced in accordance with the generic provisions of this protocol.  To the extent that responsive data identified on a mobile or handheld device is not susceptible to normal production protocols, the Parties will meet and confer to address the identification, production, and production format of any responsive documents and data contained on any mobile or handheld device.

**J.     Other Filtering or Culling Technologies.**

The Parties will disclose any other proposed or use of technologies not specified herein to reduce the number of documents identified for classification or to be reviewed or produced (*i.e.*, file type culling, e-mail thread suppression, etc.).

**K.     Production Format and Processing Specifications.**

1.     All spreadsheet (e.g., Microsoft Excel) files shall be produced as native files. Spreadsheet files requiring redaction, including Microsoft Excel files, will be redacted within the native file, and the redacted native file will be produced as provided herein.

2.     All word processing (e.g., Microsoft Word), presentation (e.g., Microsoft PowerPoint), and emails shall be produced as native files, unless redactions are required, in which case such files shall be produced as TIFFs or PDF files. A document's status as redacted does not relieve the producing party from providing all of the available metadata as set forth in Paragraph 18 below.

3.     All image (e.g., .jpg, .gif) and PDF files shall be produced as native files, TIFFs, or PDF files, unless redactions are required, in which case such files shall be produced as TIFFs or PDF files.  A document's status as redacted does not relieve the producing party from providing all of the available metadata as set forth in Paragraph 18 below.

4. All media files, such as audio and video files and digital photographs, shall be produced as native files.

5. The Parties will meet and confer on the production format of less-commonly used file types, such as CAD, GIS data, materials and prototypes testing, etc.

6. In advance of depositions, the Parties reserve the right to produce TIFF versions of any previously produced native file at their discretion.

7. All ESI shall be produced with all available metadata. Redacted ESI, other than spreadsheet files which will be produced as redacted native files, will be produced as TIFFs with applicable metadata.

8. <u>Foreign Language Documents.</u> Hard-copy documents and ESI that contains languages other than English, in whole or in part, shall be produced in the original language(s), along with all existing translations.

9. <u>Text Extracted from Emails.</u> Text extracted from emails shall include all header information that would be visible if the email was viewed in Outlook, to the extent reasonably possible without incurring undue expense, including: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), (5) the date and time of the email, and (6) the names of any attachments to the extent reasonably possible without incurring undue expense.

10. <u>TIFFs of Redacted ESI</u>. TIFFs or PDFs of redacted ESI shall include all non-redacted elements and formatting which are visible in any view of the document in its native application.

11. <u>Bates Numbers</u>. All bates numbers will consist of a 3 digit Alpha Prefix, followed immediately by an 8 digit numeric: AAA########.  There must be no spaces in the Bates number. Any numbers with less than 8 digits will be front padded with zeros to reach the required 8 digits.  The producing party will brand all images in the lower right-hand corner with its corresponding bates number, using a consistent font type and size.  The Bates number must not obscure any part of the underlying image.  If the placement in the lower right-hand corner will result in obscuring the

underlying image, the Bates number should be placed as near to that position as possible while preserving the underlying image.

      12.      <u>Exception Files.</u> The Parties will use reasonable efforts and standard industry practices to address Documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI) ("Exception Files").  The Parties will meet and confer regarding procedures that will be used to identify, access, and process Exception Files. If the Parties cannot reach agreement on the handling of Exception Files through the meet and confer process, the matter may be submitted to the Court for determination.

      13.      <u>Databases, Structured, Aggregated or Application Data.</u> The Parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured or aggregated data source or otherwise maintained by an application.  The Parties will cooperate in the exchange of information concerning such databases and data sources to facilitate discussions on productions and production format.  If the Parties cannot reach agreement, the matter will be decided by the Court or its designee.

      14.      <u>De-NISTing.</u> Electronic files will be De-NISTed, removing commercially available operating system and application file information contained on the current NIST file list.

      15.      <u>Lost, Destroyed or Irretrievable ESI.</u> If a Party learns that responsive ESI that once existed was lost, destroyed, or is no longer retrievable as a result of acts or circumstances not occurring in the ordinary course of business, that Party shall comply with its obligations under the Federal Rules of Civil Procedure to explain where and when the responsive ESI was last retrievable in its original format and to disclose the circumstances surrounding the change in status of that responsive ESI, whether that information is available from other sources, and whether any backup or copy of such original responsive ESI exists.  Nothing in this paragraph is intended to expand or limit the obligations under the Federal Rules of Civil Procedure.

      16.      <u>Scanning of Hard-Copy Documents.</u> In scanning paper documents, documents are to be produced as they are kept.  For documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where practicable. Pages with Post-It notes shall be scanned both with and without the Post-it, with the image of the page with the Post-it

preceding the image of the page without the Post-It.  The Parties will use best efforts to unitize documents (*i.e.*, distinct documents should not be merged into a single record, and a single document should not be split into multiple records), and maintain document relationships, i.e., attachment status.  Original document orientation (*i.e.*, portrait v. landscape) should be maintained.

17. <u>Proprietary Software.</u> To the extent that relevant ESI cannot be rendered or reviewed without the use of proprietary software, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format, including issues as may arise with respect to obtaining access to any such software and operating manuals.

18. <u>Confidentiality Treatment.</u> The Parties have entered into a Stipulated Protective Order in this matter, which specifies various confidentiality treatment levels for use in this matter.

a. The producing party will brand any confidentiality endorsements in a corner of any TIFF images representing the produced item.  Those endorsements must be in a consistent font type and size and must not obscure any part of the underlying image or Bates number.

19. <u>Redactions</u>.  No redactions for relevance may be made within a produced document or ESI item.  For redacted items which were originally ESI, all metadata fields will be provided and will include all non-redacted data. A document's status as redacted does not relieve the producing party from providing all of the metadata required herein.

20. <u>Searchability</u>. The Parties agree not to degrade the searchability of documents as part of the document production process.

21. <u>De-duplication</u>. No document may be withheld as a duplicate, although parties may use deduplication for their own internal review and other internal processes.

22. <u>Email Threading</u>. No email may be withheld because it is included in whole or in part in a more inclusive email, although parties may use email threading for their own internal review and other internal processes.

23. <u>Color.</u>  Paper documents or redacted ESI that contain color necessary to decipher the meaning, context, or content of the document or ESI shall be produced as single-page JPG images with a high-quality setting as to not degrade the original image to the extent reasonably possible without incurring undue expense.

24. <u>Encrypted or Password-Protected ESI.</u> For any ESI that is produced in encrypted format or is password-protected, the producing party will provide the propounding party a means to gain access to those native files (for example, by supplying passwords.)

25. <u>Parent-Child Relationships.</u>  Parent-child relationships (the association between an attachment and its parent document or between embedded documents or linked internal or non-public documents and their parents) shall be preserved.

26. <u>Family Groups.</u> If any member of a family group is produced, all members of that group must be also be produced or else logged as privileged, and no such member shall be withheld from production as a duplicate.

27. <u>Production Media.</u> The producing party will use the appropriate electronic media (CD, DVD or hard drive) or secure electronic transfer (such as Drop Box) for its ESI production, and, if physical media is being provided, the Producing Party will cooperate in good faith to use the highest-capacity available media to minimize associated overhead.  The producing party will label the physical media with the producing party, production date, media volume name, and document number range. Any replacement Production Media will cross-reference the original Production Media, clearly identify that it is a replacement and cross-reference the Bates Number range that is being replaced.

28. <u>Write Protection and Preservation.</u>  All computer media that is capable of write protection should be write-protected before production.

L. **Alternate Formats**

Notwithstanding the Parties' stipulations herein, upon reasonable request made by the Receiving Party, if particular documents warrant different formats to be legible or accessible, the Parties shall confer regarding the mutually acceptable production of such documents, which may be in an alternate format of a document previously produced in accordance with this order.

M. **ESI Liaisons**

To promote transparency, communications, and cooperation between the Parties, the Parties shall designate e-discovery liaisons for purposes of meeting and conferring on ESI topics. As proposed by the Parties, the ESI liaison for Plaintiffs shall be Jennifer Sperling (contact information in caption), Matthew Turnbull (contact information in caption), and Doug Forrest with ILS (contact information available

through DFEH) and the ESI liaison for Defendants shall be Scott Belden and Jazmine Flores, Esq., of Belden Blaine Raytis, LLP (contact information in caption) and a representative of Grimmway who may be contacted through counsel for Grimmway (contact information in caption).  All productions of ESI by any Party or non-party shall be sent to the Parties' respective ESI liaison and lead counsel, and any identified designees.

**N.    Privilege Log.**

Simultaneously with each production, Defendants shall provide Plaintiffs with a log of the documents withheld or redacted for privilege, or on any other basis.  The producing party or withholding party shall comply with the provisions of the Federal Rules of Civil Procedure, Rule 26(b)(5).

**O.    Limitations and Non-Waiver.**

This protocol provides a general framework for the production of ESI and paper documents on a going forward basis.  The Parties and their attorneys do not intend by this protocol to waive their rights to the attorney-client or work-product privileges or other applicable privileges.

Pursuant to the Federal Rules of Evidence, Rule 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not by itself a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

**P.    General Provisions.**

1.    Any practice or procedure set forth herein may be varied by agreement of the Parties, and first will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of electronic data or other covered discovery materials.

///

2.    Should any Party subsequently determine in good faith that it cannot proceed as required by this order or that the order requires modification, the Parties will meet and confer to resolve any dispute before seeking Court intervention.

3.    The Parties agree that e-discovery may be conducted in phases and the Parties will meet and confer regarding the mechanics of phased discovery, including timing.

4. Nothing in this agreement relieves any Party claiming undue expense, of the evidentiary burden under Federal Rule of Civil Procedure 26(b)(2)(B), on motion to compel.

SO STIPULATED.

Dated: May 30, 2022                         DEPARTMENT OF FAIR EMPLOYMENT
                                            AND HOUSING


                                            By: */s/ Jennifer H. Sperling* (as auth. 3/30/22)
                                            Jennifer H. Sperling
                                            Attorney for Plaintiff, Department of Fair Employment
                                            and Housing

Dated: May 31, 2022                         BELDEN BLAINE RAYTIS, LLP


                                            By: */s/ Jazmine Flores*
                                            Jazmine Flores
                                            Attorney for Defendant, Grimmway Enterprises, Inc., d.b.a.
                                            Grimmway Farms


**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

Dated:  March 31, 2022

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE