1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CIVIL RIGHTS DEPARTMENT,                    No. 2:21-cv-01552-DAD-AC

12                  Plaintiff,

13          v.                                   ORDER DENYING DEFENDANT'S
                                                 MOTION TO DENY CLASS
14   GRIMMWAY ENTERPRISES, INC.,                 CERTIFICATION OR STRIKE CLASS OR
                                                 GROUP ALLEGATIONS AND GRANTING
15                  Defendant.                   IN PART AND DENYING IN PART THE
                                                 PARTIES' CROSS-MOTIONS FOR
16                                               SUMMARY JUDGMENT

17                                               (Doc. Nos. 118, 122, 124, 155)

18

19

20          This matter is before the court on the motion to deny class certification or strike plaintiff

21   Civil Rights Department ("CRD")'s class or group allegations brought on behalf of defendant

22   Grimmway Enterprises, Inc. ("Grimmway"), and the parties' cross-motions for summary

23   judgment, which were all filed January 31, 2025.  (Doc. Nos. 118, 122, 124.)  The pending

24   motions were taken under submission pursuant to Local Rule 230(g).  (Doc. No. 146.)  For the

25   reasons explained below, defendant's motion to deny class certification or strike class or group

26   allegations will be denied and the parties' cross-motions for summary judgment will be granted in

27   part and denied in part.

28   /////

                                                 1

**BACKGROUND**

**A.    Factual Background[1]**

    1.    Defendant's Organizational Structure

Defendant maintains a Human Resources Department which, in turn, encompasses departments known as the Employee Relations Department and a Safety and Corporate Affairs Department. (DAF ¶ 1.) The Safety and Corporate Affairs Department encompasses the Workers' Compensation Department. (*Id.*) The Employee Relations Department encompasses sub-departments known as the Medical Leave of Absence Section and Interactive Process Section. (*Id.* at ¶ 2.) Defendant generally routes employees presenting with potential or actual health-related issues through its administrative departments based on whether the employee's issue is industrial (issues arising on-the-job) or non-industrial (issues arising off-the-job). (*Id.* at ¶ 3.) Non-industrial health-related issues are generally routed to the Medical Leave of Absence Section for processing in the first instance. (*Id.* at ¶ 4.) Industrial health-related issues are generally routed to the Workers' Compensation Department for processing in the first instance. (*Id.* at ¶ 5.)

If an employee referred to the Medical Leave of Absence Section is entitled to and has not exhausted any statutorily-protected leave of absence, personnel will place the employee on the

---

[1]  The relevant facts that follow are undisputed unless otherwise noted and are derived from the undisputed facts as stated by plaintiff and responded to by defendant (Doc. Nos. 124-2 ("PUF"), 130-7 ("PAF")), and as stated by defendant and responded to by plaintiff (Doc. Nos. 122-1 ("DUF"), 132-6 ("DAF")). Additionally, the parties have requested that the court take judicial notice of several exhibits. Defendant requests that the court take notice of defendant's exhibit A, a version of California Government Code § 12965; defendant's exhibit B, a version of California Government Code § 12965; defendant's exhibit C, a Bill of Analysis; and defendant's exhibit D, S.B. 1038. (Doc. No. 136.) Plaintiff does not oppose defendant's request. The court takes judicial notice of these exhibits as legislative history. *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012). Plaintiff requests that the court take judicial notice of two exhibits. (Doc. No. 155.) Defendant does not oppose plaintiff's request. Plaintiff's exhibit A is a copy of an Assembly Floor Analysis. (*Id.* at 2.) The court may take judicial notice of exhibit A as legislative history. *Anderson*, 673 F.3d at 1094 n.1. Plaintiff's exhibit B is a copy of a notice of right-to-sue provided by the Equal Employment Opportunity Commission ("EEOC"). (Doc. No. 155 at 2.) The court may take judicial notice of exhibit B as a matter of public record. *Gallo v. Lantheus Med. Imaging, Inc.*, No. 2:24-cv-03391-TLN-SCR, 2025 WL 1150998, at *3 (E.D. Cal. Apr. 18, 2025) (taking judicial notice of a right-to-sue notice from EEOC). The court therefore takes judicial notice of plaintiff's exhibits A and B.

1    applicable protected leave of absence, which will continue as long as it is unexhausted and

2    medical documentation indicates that it is necessary.  (*Id.* at ¶ 9.)  If an employee referred to the

3    Medical Leave of Absence Section has exhausted their protected leave, at some point thereafter

4    the employee is referred to the Interactive Process Section.  (*Id.* at ¶ 11.)

5        Employees with industrial health-related issues are referred to the Workers'

6    Compensation Department, which will generally first refer the employee to a physician within

7    defendant's medical network.  (*Id.* at ¶ 13.)  If a medical examination of an employee referred to

8    the Workers' Compensation Department indicates that the employee can return to work with no

9    restrictions, the employee is returned to work.  (*Id.* at ¶ 14.)  If the doctor determines that the

10   employee can work with temporary work restrictions, those work restrictions may be

11   accommodated.  (*Id.* at ¶ 15.)  If they are not, or if the employee cannot work in any capacity, the

12   employee is placed on leave.  (*Id.* at ¶¶ 16–17.)  The process in the Workers' Compensation

13   Department generally ends when a doctor evaluating the employee's condition determines that

14   the employee has reached a state of Maximum Medical Improvement as detailed in a doctor's

15   report.  (*Id.* at ¶ 18.)  If the employee's permanent work restrictions cannot be accommodated

16   while they are in the Workers' Compensation Department, the Workers' Compensation

17   Department refers the employee to the Interactive Process Section.  (*Id.* at ¶ 20.)

18       The vast majority of employees who are processed by the Interactive Process Section are

19   referred to that Section either from the Medical Leave of Absence Section or the Workers'

20   Compensation Department.  (*Id.* at ¶ 21.)  Between January 1, 2016 and March 1, 2024, over 600

21   of defendant's employees were referred to the Interactive Process Section for various reasons.

22   (*Id.* at ¶ 23.)  With certain exceptions, plaintiff seeks to represent a group or class that consists of

23   those employees referred to the Interactive Process Section during this period ("the referred

24   group").  (Doc. No. 124-1 at 18 n.5.)

25       Rocio Ramirez worked in the Interactive Process Section of the Employee Relations

26   Department.  (DAF ¶ 75.)  Sara Oliver is one supervisor who was asked to review certain

27   /////

28   /////

1  Interactive Process files with Rocio Ramirez, for instance where the file was complicated or

2  where Rocio Ramirez asked for assistance.  (Bloxom Tr. 34:22–40:23.)[2]

3        Defendant informed employees of their rights by making available to employees postings

4  delineating employees' rights to reasonable accommodation and the interactive process.  (DAF

5  ¶ 85.)

6        2.    Unpaid Leave

7        Defendant automatically funneled into unpaid leave almost all employees who were

8  referred to the Interactive Process Section during the relevant time period (at least 96%) to

9  provide defendant time to engage in the interactive process and had a policy of doing so.  (PUF

10  ¶¶ 28, 41; PAF ¶ 35; Rocio Ramirez Tr. at 111:10–25.)  The Interactive Process Department was

11  not aware of the accommodations given to employees prior to referral.  (Rocio Ramirez Tr. at

12  161:21–162:3.)  199 employees were referred from the Workers' Compensation Department to

13  the Interactive Process Section, 197 of those employees were placed on leave upon transfer, and

14  13.7% of those 197 had been accommodated in some form of light or modified work at the time

15  of their referral.  (PUF ¶ 34.)

16  /////

17  /////

18  /////

19  /////

20  /////

21  /////

22  /////

23  /////

24  /////

25  /////

26

27  [2]  It is a matter of dispute in the record whether Sara Oliver is one of two supervisors who were asked to review certain Interactive Process files with Rocio or if other employees also reviewed

28  Interactive Process files with Rocio.  (Bloxom Tr. 34:22–40:23.)

4

1      3.    Assistive Technology

2           Plaintiff's expert, Dr. Robert Sniderman, based on the information he reviewed[3] and his

3  background and experience as a Human Resources Consultant, concluded in his expert report that

4  defendant's "practices are not compliant with prevailing Guidelines or industry standards for

5  meeting employers' reasonable accommodation obligations[.]"  (Doc. No. 124-5 at 31–32.)

6  According to Dr. Sniderman, defendant's interactive process results in surprisingly poor

7  outcomes, with surprisingly few of the employees referred to the Interactive Process Section

8  returning to work.  (*Id.* at 10, 12.)  There are a number of common assistive technologies that are

9  often utilized in similar settings to accommodate restrictions.  (*Id.* at 21.)  Yet according to Dr.

10  Sniderman, defendant systematically failed to consider assistive technology as a possible

11  reasonable accommodation.  (*Id.*)  In another report, Dr. Sniderman remarks that "there are a

12  number of common and inexpensive assistive technologies that [the expert] did not see in use at

13  _____

14  [3]  Defendant raises multiple objections to the summary evidence on which plaintiff's expert relies.
   The summary evidence at issue consists of a table listing each employee in the referred group
15  along with certain information available in the employees' interactive process files.  (Doc. No.
   125-32.)  First, defendant argues that the summary should be excluded as not presented to
16  defendant prior to plaintiff's filing of its motion for summary judgment.  However, nothing in
   Rule 1006 imposes a disclosure requirement with respect to the summaries themselves.  *See Fid.*
17  *Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, 412 F.3d 745, 753 (7th Cir.
   2005) ("[Rule 1006] does not say when the summaries must be made available to the party—for
18  that matter, it nowhere states that the *summaries* must be made available to the opposing party.").
   Second, defendant argues that plaintiff's counsel is not qualified to put together the statistical
19  summary.  Defendant's argument in this regard is unpersuasive.  *See Canava v. Rail Delivery*
   *Serv. Inc.*, No. 5:19-cv-00401-SB-KK, 2021 WL 5445977, at *10 (C.D. Cal. Aug. 27, 2021)
20  ("Defendants' assertion that Kandel must be an expert to testify about his calculations is
   incorrect. . . . Defendants' conclusory assertion that the summary exhibits at issue here 'fall in
21  the domain of experts' because they contain math is also wrong.  Rule 1006 does not bar the
   presentation of complicated numbers.") (citations omitted).  Third, defendant argues that
22  plaintiff's counsel is not an expert witness and, as such, a summary prepared by counsel is
   not admissible.  However, "[s]ummary evidence prepared by counsel is admissible pursuant to
23  [Rule] 1006."  *Rowe v. Michaels Stores, Inc.*, No. 5:15-cv-01592-EJD, 2017 WL 4237003, at *3
   (N.D. Cal. Sept. 25, 2017).  Fourth, defendant argues that plaintiff failed to disclose counsel as a
24  witness.  The court finds that any failure to disclose counsel as a witness is harmless because
   plaintiff was not required to disclose the summary itself, which would be the sole appropriate
25  subject of any deposition of counsel.  Rule 37(c)(1).  Finally, defendant's argument that the
   summary is prejudicial because it selectively presents only data favorable to plaintiff's position
26  fails because defendant provides no support for this claim sufficient to warrant exclusion on the
   grounds of prejudice.

27

28

1   Grimmway facilities, but are of the kind often utilized in similar settings to accommodate

2   restrictions – and that any expert in this area might expect to see in an industrial setting." (Doc.

3   No. 130-2 at 7.)  Dr. Sniderman reported that a defendant supervisor described the process for

4   finding permanent accommodations solely as looking for another job and expressed unfamiliarity

5   with any other type of accommodation.  (*Id.* at 8.)  Rocio Ramirez testified to never having

6   researched assistive technologies, and defendant's Chief People Officer stated that Rocio Ramirez

7   is not going to make a recommendation to accommodate a stool if that is not something the

8   employee has asked for and is not something that, in their experience, is an accommodation for

9   standing.  (*Id.*)  According to Dr. Sniderman, defendant's "interactive process fails to produce the

10  kinds of options for reasonable accommodations that it should and is over reliant on leave and

11  reassignment as its primary options for accommodation, ignoring other possibilities that are

12  commonly used in industrial settings such as assistive technology, job modification and job

13  sharing." (Doc. No. 124-5 at 31–32.)

14          4.    <u>Reassignment</u>

15          With regard to reassignment, Keisha Butler, a medical leave management specialist,

16  testified at deposition that a disabled employee could "bid" for an open position that did not

17  conflict with their restrictions, though they may not be the only person to sign up for it.  (PUF

18  ¶ 97; Doc. No. 125-20 at 19–21; Keisha Butler Tr. at 23:1.)  Supervisory employee Kari Sanchez

19  testified at deposition that if disabled employee Ruben Ramirez as well as others were all

20  qualified for a security job at the same time, then who received the position would be based on

21  seniority.  (PUF ¶ 98; Doc. No. 125-17 at 7.)  Yet Grimmway does not have an established

22  seniority system.  (PUF ¶ 99.)  Rocio Ramirez testified at deposition that for disabled employees

23  involved in the interactive process, she would "push for" or "request" that HR contact the hiring

24  manager and try to schedule the interview of the employee pretty much right away.  (PUF ¶ 100;

25  Doc. No. 125-5 at 37.)

26          Rocio Ramirez also testified that she discloses to HR that the employee is involved in the

27  interactive process and "should be considered for the job before others, basically." (Doc. No.

28  125-5 at 37.)  Kari Sanchez, a production manager for defendant, testified at deposition that if a

1    disabled employee meets the requirements of an open position, they are given preference in hiring

2    for that position.  (Kari Sanchez Tr. at 17:17, 29:6–16.)

3              5.    Disabled and Otherwise Qualified Employee[4]

4              For example, one of the referred group members:  (1) was immediately placed on

5    interactive process leave; (2) her file lacks any indication that defendant considered assistive

6    technology as a reasonable accommodation despite the employee's lifting restriction; (3) her file

7    lacks any indication that defendant performed an undue hardship analysis; and (4) she was not

8    given preference in hiring even though reassignment would have been a reasonable

9    accommodation.  (Oum Decl. Ex. EE at GEI00101345–86.)  The employee proposed

10   reassignment to alternative positions to accommodate her disability.  (Id. at GEI00101353.)

11   Defendant rejected the employee's proposals because the positions purportedly required lifting at

12   least 25 pounds or walking up and down stairs.  (Id. at GEI00101352.)  However, a job posting

13   stated that the first position at issue required lifting only 20 pounds and, even assuming walking

14   up and down stairs was an essential function of the latter job, the employee's record indicates that

15   she was not restricted from walking up and down stairs.  (Id. at GEI00101347, GEI00101351.)

16   **B.    Procedural Background**

17             On August 30, 2021, plaintiff filed its operative complaint in which it asserts the

18   following claims against defendant under the Americans with Disabilities Act ("ADA") and

_____

19   [4]  Plaintiff requests to seal certain documents submitted in support of its opposition to defendant's

20   motion for summary judgment because those documents contain medical information and personally identifying information.  See Chester v. King, No. 1:16-cv-01257-DAD-GSA (PC), 2019 WL 5420213, at *2 (E.D. Cal. Oct. 23, 2019) ("[T]he need to protect medical privacy

21   qualifies as a 'compelling reason' for sealing records."); UnifySCC v. Cody, No. 5:22-cv-01019-BLF, 2024 WL 4752092, at *2 (N.D. Cal. Oct. 24, 2024) ("Other courts have found compelling

22   reasons to seal personally identifying information[.]").  If the documents could "be redacted to conceal all information that would identify any class member" the court would deny plaintiff's

23   request to seal.  Hedrick v. Grant, No. 2:76-cv-00162-GEB-EFB, 2017 WL 550044, at *2 (E.D. Cal. Feb. 10, 2017).  "Such redactions would protect the privacy of class members while

24   providing some public access to these filings, which will be among the evidence considered by the court[.]"  Id.  However, here personally identifying information is "too numerous to redact[.]"

25   A.B. ex rel. W.F.B. v. San Francisco Unified Sch. Dist., No. 07-cv-04738-PJH, 2007 WL 2900527, at *1 (N.D. Cal. Oct. 2, 2007).  To balance class members' privacy and the public's

26   interest in "follow[ing] and understand[ing] . . . the judicial process that unfolds in this case," the court will seal the documents in full, but this order will reference without redaction anonymized

27   information contained in the sealed documents, including one employee's work restrictions and interactions with defendant as to accommodations.  Ellis-Sanders v. Guardian Piazza D'Oro

28   LLC, No. 25-cv-01379-JO-DDL, 2025 WL 1637043, at *1 (S.D. Cal. June 9, 2025).

1   California's Fair Employment and Housing Act ("FEHA"):  (1) disability discrimination in

2   violation of 42 U.S.C. § 12112 and California Government Code § 12940(a); (2) failure to

3   provide reasonable accommodation in violation of 42 U.S.C. § 12112(b) and California

4   Government Code § 12940(m); (3) failure to engage in the interactive process in violation of 42

5   U.S.C. § 12112(b) and California Government Code § 12940(n); (4) retaliation in violation of 42

6   U.S.C. § 12203(a) and California Government Code § 12940(h); (5) unlawful interference with

7   rights in violation of 42 U.S.C. § 12203(b); (6) failure to take all reasonable steps to prevent

8   discrimination, harassment, and retaliation (on behalf of the group) in violation of California

9   Government Code §§ 12930(f), 12940(k); and (7) failure to take all reasonable steps to prevent

10  discrimination, harassment, and retaliation (on behalf of the CRD) in violation of California

11  Government Code §§ 12930(f), 12940(k).  (Doc. No. 1 at ¶¶ 39–102.)

12         On January 31, 2025, defendant filed the pending motion to deny class certification and/or

13  strike the group or class claims and the parties filed their pending cross-motions for summary

14  judgment.  (Doc. Nos. 118, 122, 124.)  The parties also filed declarations in support of those

15  motions.  (Doc. Nos. 119, 123, 125.)  On March 17, 2025, the parties filed oppositions to the

16  pending motions and declarations in support of those oppositions, and defendant filed a response

17  to plaintiff's declaration.  (Doc. Nos. 129, 130, 131, 132, 133, 134.)  On March 19, 2025,

18  defendant filed an amended request for judicial notice in connection with its opposition to

19  plaintiff's motion for summary judgment.  (Doc. No. 136.)  On April 7, 2025, the parties filed

20  their reply briefs.  (Doc. Nos. 141, 142, 143.)  On April 11, 2025, plaintiff requested leave to file

21  a sur-reply to defendant's reply in support of its motion for summary judgment.  (Doc. No. 144.)

22  That request was granted and plaintiff's proposed sur-reply was deemed filed on May 1, 2025.

23  (Doc. No. 147.)  On May 20, 2025, the court directed the parties to file supplemental briefing.

24  (Doc. No. 148.)  The parties filed their supplemental briefs, and plaintiff filed a request for

25  judicial notice, on June 10, 2025.  (Doc. Nos. 154, 155, 156.)

26  /////

27  /////

28  /////

8

1    **LEGAL STANDARD**

2    Summary judgment is appropriate when the moving party "shows that there is no genuine

3    dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

4    Civ. P. 56(a).

5    In summary judgment practice, the moving party "initially bears the burden of proving the

6    absence of a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387

7    (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The moving party

8    may accomplish this by "citing to particular parts of materials in the record, including

9    depositions, documents, electronically stored information, affidavits or declarations, stipulations

10   (including those made for purposes of the motion only), admissions, interrogatory answers, or

11   other materials," or by showing that such materials "do not establish the absence or presence of a

12   genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

13   Fed. R. Civ. P. 56(c)(1)(A), (B).  If the moving party will bear the burden of proof on an issue at

14   trial, "the movant must affirmatively demonstrate that no reasonable trier of fact could find other

15   than for the moving party."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir.

16   2007).  When the non-moving party bears the burden of proof at trial, "the moving party need

17   only prove that there is an absence of evidence to support the non-moving party's case."  *Oracle

18   Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).

19   Indeed, after adequate time for discovery and upon motion, summary judgment should be entered

20   against a party who fails to make a showing sufficient to establish the existence of an element

21   essential to that party's case, and on which that party will bear the burden of proof at trial.  *See

22   Celotex*, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the

23   nonmoving party's case necessarily renders all other facts immaterial."  *Id.* at 322–23.  In such a

24   circumstance, summary judgment should be granted, "so long as whatever is before the district

25   court demonstrates that the standard for the entry of summary judgment . . . is satisfied."  *Id.* at

26   323.

27   If the moving party meets its initial responsibility, the burden then shifts to the opposing

28   party to establish that a genuine issue as to any material fact actually does exist.  *See Matsushita*

9

1    *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the

2    existence of this factual dispute, the opposing party may not rely upon the allegations or denials

3    of its pleadings but is required to tender evidence of specific facts in the form of affidavits or

4    admissible discovery material in support of its contention that the dispute exists.  *See* Fed. R. Civ.

5    P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773

6    (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for

7    summary judgment.").  The opposing party must demonstrate that the fact in contention is

8    material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the

9    dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

10   non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986).

11          In the endeavor to establish the existence of a factual dispute, the opposing party need not

12   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

13   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

14   trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

15   Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in

16   order to see whether there is a genuine need for trial.'"  *Matsushita*, 475 U.S. at 587 (citations

17   omitted).

18          "In evaluating the evidence to determine whether there is a genuine issue of fact," the

19   court draws "all inferences supported by the evidence in favor of the non-moving party."  *Walls v.*

20   *Cent. Contra Costa Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing party's

21   obligation to produce a factual predicate from which the inference may be drawn.  *See Richards*

22   *v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th

23   Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

24   simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record

25   taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

26   'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 586–87 (citations omitted).

27   /////

28   /////

10

**ANALYSIS**

A.      **Defendant's Motion to Deny Class Certification or Strike Class or Group Allegations**

In its motion to deny class certification, defendant argues that plaintiff lacks the authority to bring suit in a representative capacity without obtaining class certification under Rule 23. (Doc. No. 118 at 35.)  Although the federal Equal Employment Opportunity Commission ("EEOC") may bring representative suits without satisfying Rule 23, defendant argues that this is because 42 U.S.C. § 2000e-5(f)(1), a provision of Title VII incorporated into the ADA by 42 U.S.C. § 12117(a), specifically identifies the EEOC as permitted to bring suit in its own name. (*Id.*)  In contrast, defendant argues, the statute does not specifically identify state agencies as being permitted to bring suit.  (*Id.*)

In its opposition to defendant's motion to deny class certification, plaintiff argues that just as the EEOC, a government agency, is permitted to sue in a representative capacity without satisfying the requirements of Rule 23, state agencies may also sue in a representative capacity without satisfying Rule 23 requirements.  (Doc. No. 129 at 11.)  Plaintiff further argues that 42 U.S.C. § 12117(a), the provision of the ADA that incorporates 42 U.S.C. § 2000e-5(f)(1), among other provisions, grants the powers, remedies, and procedures of those provisions to "any person alleging discrimination on the basis of disability[,]" and the ADA incorporates a definition of "person" that includes "governments" and "governmental agencies[.]"  42 U.S.C. § 2000e; *see* 42 U.S.C. § 12111(7) ("The term[ ] 'person' . . . shall have the same meaning given such term[s] in section 2000e of this title").  (Doc. No. 129 at 17.)  Therefore, plaintiff contends that just as the EEOC is given authority to sue, so also are those state agencies that are charged with enforcement of the ADA under state law.  (*Id.*)

The court agrees that any person alleging discrimination on the basis of disability has the powers, remedies, and procedures of the designated provisions of Title VII, 42 U.S.C. § 12117(a), and that plaintiff, as a governmental agency, qualifies as a "person" alleging discrimination on the basis of disability under 42 U.S.C. § 2000e and 42 U.S.C. § 12111(7).  The question remains as to what powers, remedies, and procedures the designated provisions of Title VII offer, to whom, and in what capacity.

11

The Supreme Court found that the EEOC has authority to sue under Title VII in a representative capacity without satisfying the requirements of Rule 23 in part because of "the EEOC's jurisdiction over enforcement[.]"  *Gen. Tel. Co. of the Nw. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 324 (1980); *see also id.* ("[T]he EEOC need look no further than [§ 2000e-5(f)(1)] for its authority to bring suit in its own name for the purpose, among others, of securing relief for a group of aggrieved individuals.").  Based on this seminal case, "[t]he principle that has emerged is that where a governmental agency is authorized to act in the public's interest to obtain broad relief, *e.g.,* in the role of *parens patriae*, and the authorizing statute confers such power without reference to class certification, Rule 23 may not apply."  *Dep't of Fair Emp. & Hous. v. L. Sch. Admission Council, Inc.*, 941 F. Supp. 2d 1159, 1166 (N.D. Cal. 2013).  This principle extends to state agencies.  *Id.* (collecting cases).  Neither the incorporated provisions of Title VII nor Title I of the ADA references class certification, and neither party in this case suggests otherwise.  The sole question then is whether state agencies like plaintiff are authorized to act in the public's interest to obtain broad relief under the provisions of Title VII incorporated into the ADA.  *See Connecticut v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110, 120 (2d Cir. 2002) ("When determining whether a state has *parens patriae* standing under a federal statute, we ask if Congress intended to allow for such standing.").

In addition to the EEOC, the "person claiming to be aggrieved" may bring suit under Title VI and therefore under the ADA.  42 U.S.C. § 2000e-5(f)(1).  Person is defined by statute to include "governments" and "governmental agencies[.]"  42 U.S.C. § 2000e; *see* 42 U.S.C. § 12111(7) ("The term[] 'person' . . . shall have the same meaning given such term[s] in section 2000e of this title").  Furthermore, the Supreme Court has found that "the term 'aggrieved' in Title VII"—and therefore in the ADA—incorporates the 'zone of interests' test, "enabling suit by any plaintiff with an interest 'arguably [sought] to be protected by the statute[.]'"  *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 178 (2011) (citation omitted).  The "zone of interests" test denies "a right of review 'if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.'"  *Id.* (citation omitted).  Here, plaintiff has an interest in addressing

12

1    alleged disability-based unlawful employment practices occurring within the borders of the State

2    of California and affecting its citizens.  *See Com. of Mass. v. Bull HN Info. Sys., Inc.*, 16 F. Supp.

3    2d 90, 98 (D. Mass. 1998) ("Discrimination of any kind, whether based on age, race or handicap,

4    corrodes the social fabric and fosters intolerance and inequality.  It is unambiguously in the

5    interest of the state to stop it in its tracks.").  This interest is within the zone of interests of the

6    ADA, which aims to address disability-based unlawful employment practices and to protect the

7    state's role in addressing unlawful discrimination.  *See* 42 U.S.C.A. § 2000e-5(c) (requiring that

8    state and local authorities be given time to address unlawful employment practices through state

9    or local law before the EEOC or individuals may bring suit).  Because states qualify as persons

10   claiming to be aggrieved, they are authorized to bring suit under Title VI and therefore under the

11   ADA.  *E.E.O.C. v. Fed. Express Corp.*, 268 F. Supp. 2d 192, 197 (E.D.N.Y. 2003) ("When read

12   together, these provisions clearly authorize the State of New York, as a 'government,' to bring

13   suit under Title VII.").

14        Having concluded that states are authorized to bring suit under Title VII and therefore the

15   ADA, the court must next determine in what capacity states are authorized to bring such suits.

16   The court concludes, based on the following analysis, that states are authorized to bring suit in

17   their capacity as *parens patriae*.

18           [A] review of the standing capacities traditionally available to
             plaintiff states confirms that Congress intended to permit *parens*
19           *patriae* actions when it authorized state governments to bring suit
             under Title VII.  In *Connecticut ex rel. Blumenthal v. Cahill*, 217
20           F.3d 93, 97 (2d Cir.2000), the Second Circuit held that "Plaintiff–
             States generally bring suit in the federal courts in one of three
21           standing capacities:  (1) proprietary suits in which the State sues
             much like a private party suffering a direct, tangible injury; (2)
22           sovereignty suits requesting adjudication of boundary disputes or
             water rights, or (3) *parens patriae* suits in which States litigate to
23           protect quasi-sovereign interests."  (citations and internal quotations
             marks omitted).  Of these three standing capacities, it is clear that a
24           state suing under Title VII can only invoke standing under the
             doctrine of *parens patriae*.  The other two forms of standing have no
25           relation to employment discrimination.  This is clearly the case with
             respect to sovereignty suits involving border disputes, and is
26           equally clear with respect to proprietary suits, since a state cannot
             suffer employment discrimination.  The court therefore finds that
27           Congress, by authorizing state governments to bring suit under Title
             VII, must have envisioned such suits being brought in the states'
28           capacity as *parens patriae*.

                                            13

1    *Id.*; *see also New York ex rel. Vacco v. Mid Hudson Med. Grp., P.C.*, 877 F. Supp. 143, 146

2    (S.D.N.Y. 1995) ("[S]tates have frequently been allowed to sue in *parens patriae* to . . . enforce

3    federal statutes that, like the ADA and Section 504, do not specifically provide standing for state

4    attorneys general.").

5          As discussed above, *parens patriae* suits are brought in a representative capacity and need

6    not comply with the requirements of Rule 23 unless the applicable statute specifies otherwise.

7    *See Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 848 (9th Cir. 2011) ("Unlike private

8    litigants, the Attorneys General have statutory authority to sue in *parens patriae* and need not

9    demonstrate standing through a representative injury nor obtain certification of a class in order to

10   recover on behalf of individuals."); *id.* at 848–49 ("reaching the conclusion that *parens patriae*

11   lawsuits are not class actions").  Therefore, state agencies, including plaintiff in this case, that sue

12   under the ADA need not satisfy class certification requirements.  *Id*

13         Because plaintiff need not certify a class to bring this representative action, the court will

14   deny as moot defendant's motion to deny class certification.  *See Elkins v. AbbVie, Inc.*, No. 6:20-

15   cv-01562-PGB-LRH, 2021 WL 9511294, at *2 (M.D. Fla. Dec. 3, 2021) ("With no class claims

16   for the Court to adjudicate, Defendant's Motion to Deny Class Certification is also moot."); *see*

17   *also Phipps v. Wal-Mart Stores, Inc.*, No. 12-cv-01009, 2018 WL 3064753, at *2 (M.D. Tenn.

18   June 21, 2018) ("Courts routinely deny as moot motions to deny class certification once class

19   claims are abandoned.").

20         Defendant also has moved to strike class or group allegations pursuant to Federal Rule of

21   Civil Procedure 12(f), which provides that "[t]he court may strike from a pleading an insufficient

22   defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).

23   Defendant appears to argue that plaintiff's class or group allegations qualify as impertinent

24   because they are "spurious[.]"  (Doc. No. 118 at 14) (citing *Sanders v. Apple Inc.*, 672 F. Supp.

25   2d 978, 991 (N.D. Cal. 2009)).  Because, for the reasons explained above, plaintiff need not

26   satisfy Rule 23 to bring a representative action, plaintiff's class or group allegations are not

27   spurious.

28   /////

1    Defendant's sole remaining argument is that, even if Rule 23 does not apply, there is a

2    manageability requirement that plaintiff fails to satisfy here.  (Doc. No. 118 at 34–35.)  Plaintiff

3    argues that there is no manageability requirement for representative actions, analogizing to claims

4    brought under California's Private Attorneys General Act of 2004 ("PAGA").  (Doc. No. 129 at

5    23–24.)  Defendant responds by arguing that this is not a PAGA action.  (Doc. No. 141 at 19–20.)

6    Defendant fails to cite any authority to support its argument that there is a manageability

7    requirement in the context of representative actions.  The court is persuaded that no such

8    manageability requirement exists for purposes of representative ADA claims brought by a state or

9    federal government.  *See E.E.O.C. v. Bass Pro Outdoor World, L.L.C.*, 826 F.3d 791, 802 n.61

10   (5th Cir. 2016) (noting that the EEOC is "unbounded by Rule 23's procedural requirements"

11   including "'manageability'"); *E.E.O.C. v. FedEx Ground Package Sys., Inc.*, 158 F. Supp. 3d 393,

12   402 (W.D. Pa. 2016) ("The issue then appears to boil down to one of case management[.]  . . .

13   While the Court appreciates this legitimate concern, the fact that it may be hard does not resolve

14   the issue.  This Court is expected to take on difficult tasks every day, and is prepared to do so in

15   this case.").  Therefore, the court will deny defendant's motion to strike plaintiff's class or group

16   claims.

17   **B.    Defendant's Motion for Summary Judgment[5]**

18        1.    <u>Pre-Suit Dispute Resolution (Affirmative Defense 7)</u>

19        In defendant's motion for summary judgment in its favor, it argues that pre-suit dispute

20   resolution is a condition precedent to the CRD bringing suit.  (Doc. No. 122 at 30–33.)  Further,

21   defendant argues that this condition precedent is not satisfied unless the CRD discloses to the

22   defendant during the dispute resolution process each factual theory of liability the CRD will

23

24   ───────────────
     [5]  Defendant's motion for summary judgment in its favor must be denied so long as a reasonable
25   jury could find for plaintiff.  At points throughout this section of this order, the court concludes
     that not only could a reasonable jury find for plaintiff as to a certain claim or defense but, in fact,
26   the undisputed evidence before the court on summary judgment entitles plaintiff to judgment in
     its favor as to that claim or defense.  The court does so because the conclusions that are
27   compelled by the evidence before it in connection with defendant's motion for summary
     judgment are also pertinent to plaintiff's motion for summary judgment, which the court
28   addresses later in this order.

15

1    pursue in any subsequent lawsuit it may pursue.  (*Id.*)  Defendant contends that plaintiff failed to

2    satisfy this requirement.  (*Id.*)

3            As the court previously found when ruling on defendant's motion for reconsideration, pre-

4    suit dispute resolution is not a condition precedent to the CRD bringing suit.  (Doc. No. 128.)

5    Defendant's new arguments based upon legislative history do not alter the court's view regarding

6    the plain text of the statute.  *See Rajaram v. Meta Platforms, Inc.*, 105 F.4th 1179, 1185 (9th Cir.

7    2024) ("But the statutory text is clear, and '[l]egislative history, for those who take it into

8    account, is meant to clear up ambiguity, not create it.'") (citation omitted).  Pursuant to the text of

9    the statute, the CRD may "bring a civil action . . . in advance" of dispute resolution efforts "if

10   circumstances warrant[.]"  Cal. Gov't Code § 12965(a)(1).  In addition, the statute contains no

11   restriction regarding when circumstances warrant civil action in advance of dispute resolution

12   efforts.  This longstanding provision therefore entrusts to the CRD the discretion to determine

13   when circumstances warrant the bringing of suit prior to dispute resolution efforts.  *Dep't of Fair*

14   *Emp. & Hous. v. L. Sch. Admission Council, Inc.*, 896 F. Supp. 2d 849, 864 (N.D. Cal. 2012)

15   ("[C]onciliation under FEHA is not a condition precedent to filing suit[.]"); *Motors Ins. Corp. v.*

16   *Div. of Fair Employment Practices*, 118 Cal. App. 3d 209, 224 (1981) ("There is little question

17   that voluntary compliance enables the Commission to better carry out its responsibilities, and that

18   a maximum effort should be made by the Division to accomplish this end, but we will not

19   prescribe the precise manner in which the Division must carry out its duties.").

20            2.    Individualized Inquiries

21            Pursuant to *International Brotherhood of Teamsters v. United States*, 431 U.S. 324

22   (1977), government actions alleging Title VII discrimination on behalf of a group or class may be

23   proven using a two-phase framework.  In the first phase, the government bears the initial burden

24   of making out a *prima facie* case of discrimination, establishing "by a preponderance of the

25   evidence that . . . discrimination was the company's standard operating procedure the regular

26   rather than the unusual practice."  *Id.* at 336.  "If an employer fails to rebut the inference that

27   arises from the Government's prima facie case, a trial court may then conclude that a violation

28   has occurred and determine the appropriate remedy."  *Id.* at 361.  "Without any further evidence

from the Government, a court's finding of a pattern or practice justifies an award of prospective relief." *Id.* "When the Government seeks individual relief for the victims of the discriminatory practice, a district court must usually conduct additional proceedings after the liability phase of the trial to determine the scope of individual relief." *Id.* These additional, remedial proceedings constitute the second phase of the *Teamsters* two-phase framework. Since the Supreme Court's decision in *Teamsters*, this two-phase framework has been extended to apply to actions brought under the ADA and FEHA. *Davoll v. Webb*, 194 F.3d 1116, 1148 (10th Cir. 1999) ("*Teamsters* sets forth a logical and efficient framework for allocating burdens of proof in pattern and practice employment discrimination suits, and we approve of the district court's use of that framework in this case" in which the plaintiff seeks relief under the ADA.); *Alch v. Superior Ct.*, 122 Cal. App. 4th 339, 378 (2004) ("On the contrary, nothing in FEHA prohibits classwide claims of systemic discrimination, which is the functional equivalent of a 'pattern or practice' claim.").[6]

Pursuant to the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "[T]he term 'discriminate against a qualified individual on the basis of disability' includes . . . not making *reasonable accommodations* to the known physical or mental limitations of an *otherwise qualified individual with a disability* who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A) (emphasis added).

Defendant argues that summary judgment in its favor is appropriate because plaintiff has failed to come forward with evidence making out a *prima facie* case of a standard operating procedure that affected employees (1) who were qualified individuals with a disability under the ADA and under the identical FEHA standard, and (2) where reasonable accommodations existed. (Doc. No. 122 at 11–12.) Plaintiff argues that establishing whether any particular individual is

[6] Pursuant to the parties' stipulation (Doc. No. 120) and good cause appearing, any trial conducted in this action will be bifurcated according to the *Teamsters* two-phase framework.

1   qualified and has a disability and whether reasonable accommodations existed are issues for the

2   second phase of the inquiry under the *Teamsters* framework.  (Doc. No. 130 at 28.)

3            The Third Circuit, when applying the *Teamsters* two phase framework to private ADA

4   class suits, reasoned as follows:

5                [The plaintiff must prove in the first phase of the *Teamsters*
                framework that] those affected by [the allegedly unlawful] policy are
6                disabled and able to perform the essential functions of the jobs they
                seek or desire with or without reasonable accommodation[.]  . . .
7                Even if the *Teamsters* framework is recognized as an acceptable
                method of proof for pattern-or-practice claims under the ADA, this
8                determination would not, by its own force, affect what patterns or
                practices constitute discrimination prohibited by the statute.  . . .
9                Instead, it is necessary to look to the ADA, the statutory basis for
                plaintiffs' claims, to assess what elements must be demonstrated for
10               the court to reach, at the first *Teamsters* stage, a determination of
                unlawful discrimination and a finding of classwide liability and
11               relief. . . .  [In the context of Title VII,] inquiry into an individual's
                employment qualifications may be integral to a court's assessment of
12               whether discrimination on the basis of race, color, religion, sex, or
                national origin has occurred; it is not likewise necessary to a
13               determination of whether such discrimination against that individual,
                once proven to have occurred, is unlawful under the statute. . . .  In
14               contrast to Title VII, [the ADA] does not prohibit discrimination
                against *any individual* on the basis of disability, but, as a general rule,
15               only protects from discrimination those disabled individuals who are
                able to perform, with or without reasonable accommodation, the
16               essential functions of the job they hold or desire.  . . .  [T]he ADA
                explicitly incorporates this inquiry into its definition of prohibited
17               discrimination, and thus generally requires evaluation of whether a
                disabled individual is 'qualified' as defined under the statute to
18               determine not only whether discrimination on the basis of disability
                has occurred, but more fundamentally, whether such discrimination
19               against that individual is unlawful. . . .  Based on this analysis of
                [the] plaintiffs' claims under the ADA, assessment of whether class
20               members are "qualified" is necessary to determine whether [the
                defendant] has engaged in a pattern or practice of unlawful
21               discrimination and thus can be held liable for violating the ADA with
                respect to the class.  . . .  [Furthermore,] the ADA's "qualified"
22               standard cannot be evaluated on a classwide basis in a manner
                consistent with Rule 23(a) and (b)(2); applying the *Teamsters*
23               evidentiary framework to [the] plaintiffs' claims does not remove
                this impediment to certification, even if all that is considered is the
24               first, 'liability' stage of that framework.

25   *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 183–96 (3d Cir. 2009).

26           This court agrees with the Third Circuit that if an employer's discriminatory policy did

27   not affect *any* qualified individuals with disabilities, then the policy would not be unlawful under

28   the ADA.  *Id.* at 192 ("[T]he ADA explicitly incorporates this inquiry into its definition of

                                          18

1   prohibited discrimination, and thus generally requires evaluation of whether a disabled individual

2   is 'qualified' as defined under the statute to determine not only whether discrimination on the

3   basis of disability has occurred, but more fundamentally, whether such discrimination against that

4   individual is unlawful.").  However, it does not necessarily follow that *each* class or group

5   member must prove at the liability phase of the *Teamsters* framework that they are qualified and

6   disabled.

7          In *Bates v. United Parcel Service, Inc.*, 511 F.3d 974 (9th Cir. 2007), a class action

8   alleging a facially discriminatory qualification standard that violated Title I of the ADA, the

9   Ninth Circuit left undisturbed the district court's finding that the evidence at trial supported a

10  finding of liability because "first, UPS's policy operated as a blanket exclusion of deaf

11  individuals, and second, at least one named plaintiff, Babaranti Oloyede, and at least one class

12  member, Elias Habib, were 'qualified' individuals with a disability[.]"  *Id.* at 984.  The district

13  court included analysis of the class member because it was possible that Oloyede's claim

14  "became moot or nonredressable[.]"  *Id.* at 988.  On appeal, the defendant argued "that *each* class

15  member is required to show" that they are otherwise qualified.  *Id.* at 990 (emphasis added).  The

16  Ninth Circuit ultimately vacated the district court's order that denied the defendant's motion for

17  judgment or alternatively to decertify the nationwide class, but not because each class member

18  was required to show that they were otherwise qualified.  *Id.* at 994.  Instead, the Ninth Circuit

19  did so because "the district court did not analyze whether *Oloyede and Habib* are 'qualified

20  individuals' capable of performing the 'essential functions' of safely driving a package car[.]"  *Id.*

21  (emphasis added).  The Ninth Circuit "remand[ed] to the district court for the employees to prove

22  that they are so qualified and for an analysis of reasonable accommodation."  *Id.*

23          Here, as in *Bates*, plaintiff need not prove that all class or group members are disabled and

24  otherwise qualified.  *See E.E.O.C. v. J.B. Hunt Transp., Inc.*, 128 F. Supp. 2d 117, 125 (N.D.N.Y.

25  2001) ("Consequently, to withstand summary judgment, though EEOC need not prove that each

26  and every class member herein was the victim of discrimination prohibited by the ADA—that is,

27  a 'qualified' individual with a disability or an individual perceived as having a disability—, it

28  must show that at least some of the purported class members are such persons."), *aff'd,* 321 F.3d

69 (2d Cir. 2003); *United States v. City & Cnty. of Denver*, 943 F. Supp. 1304, 1309 (D. Colo. 1996) (A previous court "held that, at the liability stage of a pattern-or-practice lawsuit under the ADA, the government's burden is to establish a prima facie case that a discriminatory policy existed and it need not offer evidence that each individual for whom it will ultimately seek relief was a victim of the policy.  I see no reason to differ, particularly since Title I of the ADA adopts Title VII's powers, remedies, and procedures."), *aff'd sub nom. Davoll v. Webb*, 194 F.3d 1116 (10th Cir. 1999).  In fact, in the ordinary run of cases, where there is no apparent risk that one individual's claim is moot, the plaintiff need only prove that one victim of the discriminatory pattern or practice is a qualified individual with a disability to demonstrate that the pattern or practice is unlawful under the ADA.  *See Bates*, 511 F.3d at 988.  This is because "[a]t the initial 'liability' stage of a pattern-or-practice suit the Government is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's discriminatory policy."  *Teamsters*, 431 U.S. at 360.  "Its burden is to establish a prima facie case that such a policy existed."  *Id.*  Whether the remaining class or group members were also victims of the unlawful pattern or practice is a matter for the second phase of *Teamsters*.  *Id.*

The court therefore turns to consider whether a sufficient showing has been made on summary judgment that at least one employee in the class or group is disabled and otherwise qualified, with or without a reasonable accommodation.  The court will examine one employee in particular because she purportedly experienced all four policies of which plaintiff complains in this action—(1) she was immediately placed on interactive process leave; (2) her file lacks any indication that defendant considered assistive technology as a reasonable accommodation despite a lifting restriction; (3) her file lacks any indication that defendant performed an undue hardship analysis; and (4) she was not given any preference in hiring even though reassignment would have been a reasonable accommodation, as discussed below.  (Oum Decl. Ex. EE at GEI00101345–86.)

Under the ADA, a disability is "a physical or mental impairment that substantially limits one or more major life activities of such individual[.]"  42 U.S.C. § 12102(1)(A).  "The definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this

20

1    chapter, to the maximum extent permitted by the terms of this chapter."  42 U.S.C.

2    § 12102(4)(A).  Major life activities include "lifting" and "working."  42 U.S.C. § 12102(2)(A).

3    Here, the employee's interactive process file indicates that she had "permanent work restrictions"

4    which included "[n]o lifting over 20 lbs" and "[n]o climbing of ladders[.]"  (Oum Decl. Ex. EE at

5    GEI00101358.)  Due to these permanent work restrictions, the employee was not permitted to

6    return to her regular job, and she was told that defendant was unable to accommodate her in any

7    other position.  (*Id.* at GEI00101350.)  A reasonable trier of fact could conclude that these

8    restrictions substantially limit the major life activities of working and lifting such that the

9    employee is disabled pursuant to the ADA.[7]  *See Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 436

10   (9th Cir. 2018) ("As mentioned above, however, Nunies did identify two major life activities:

11   working and lifting.  After reviewing the record, we conclude that there is at least a dispute about

12   whether Nunies' shoulder injury substantially limited those life activities.  For example, in his

13   deposition, Nunies testified that any time he lifted his arm above chest height – even without an

14   object – he would experience a stabbing pain and numbness.  Further, even in 2014, Nunies still

15   had a lifting restriction of 25 pounds."); *Liu v. DeJoy*, 664 F. Supp. 3d 1030, 1043 (C.D. Cal.

16   2023) (finding that where the plaintiff experienced pain when lifting objects over 20 pounds "a

17   reasonable jury could conclude that [the plaintiff's] injuries substantially limit his major life

18   activit[y] of lifting").

19          The court therefore turns to whether the employee was otherwise qualified, with or

20   without reasonable accommodation.  Reasonable accommodation may include reassignment to a

21   vacant position, 42 U.S.C. § 12111(9)(B), and the Ninth Circuit has found that "an employee is

22   'otherwise qualified' if he could perform the *essential functions* of his job once provided the

23   reasonable accommodation of reassignment," *Anthony v. Trax Int'l Corp.*, 955 F.3d 1123, 1134

24   (9th Cir. 2020).  "Although the plaintiff bears the ultimate burden of persuading the fact finder

---

26   [7]  Meanwhile, it is undisputed that the restrictions at issue render the employee disabled pursuant
     to FEHA.  *Bryan v. United Parcel Serv., Inc.*, 307 F. Supp. 2d 1108, 1114 (N.D. Cal. 2004)
27   (finding that, pursuant to FEHA, a "limitation in 'working' could qualify as a disability even if
     the limitation only implicated 'a particular employment'"), *aff'd sub nom. E.E.O.C. v. United*
28   *Parcel Serv., Inc.*, 424 F.3d 1060 (9th Cir. 2005).

1    that he can perform the job's essential functions, . . . 'an employer who disputes the plaintiff's

2    claim that he can perform the essential functions must put forth evidence establishing those

3    functions.'"  *Bates*, 511 F.3d at 991 (citation omitted).  Here, the employee proposed

4    reassignment to alternative positions in order to accommodate her disability.  (Oum Decl. Ex. EE

5    at GEI00101353.)  Defendant rejected these proposals because the positions purportedly required

6    lifting at least 25 pounds or walking up and down stairs.  (*Id.* at GEI00101352.)  However, a job

7    posting stated that the first position at issue required lifting only 20 pounds, and even assuming

8    walking up and down stairs was an essential function of the latter job, the employee's record

9    indicates that she was not restricted from walking up and down stairs.  (*Id.* at GEI00101347,

10   GEI00101351); *see* 42 U.S.C. § 12111(8) ("[I]f an employer has prepared a written description

11   before advertising or interviewing applicants for the job, this description shall be considered

12   evidence of the essential functions of the job.").  Given this uncontested evidence, reassignment

13   to a vacant position was a reasonable accommodation, and the employee could perform the

14   essential functions of her job once reassigned.  *Anthony*, 955 F.3d at 1134; *see also Ravel v.*

15   *Hewlett-Packard Enter., Inc.*, 228 F. Supp. 3d 1086, 1096 (E.D. Cal. 2017) (noting that the

16   qualified individual analysis is the same under the ADA and FEHA).

17        Because a reasonable trier of fact could conclude from the evidence now before the court

18   that at least one employee in the class or group is disabled and otherwise qualified, with or

19   without reasonable accommodation, defendant is not entitled to summary judgment in its favor

20   based upon these individualized inquiries.

21        3.    The Sufficiency of Plaintiff's Evidence Regarding a Pattern or Practice of

22              Discrimination (Claims 1–3)

23        Defendant next argues that the court should grant summary judgment in its favor

24   regarding the group allegations of plaintiff's claims 1–3 under the ADA and FEHA[8] because,

25   _____

26   [8]  Defendant's motion for summary judgment in its favor focuses almost exclusively on the ADA,
     only occasionally noting that FEHA is similar.  As such, where the court finds that summary

27   judgment in defendant's favor is not warranted as to plaintiff's claims brought under the ADA,
     the court will not separately examine whether summary judgment in defendant's favor is

28   warranted as to plaintiff's FEHA claims.

1  based on the evidence before the court on summary judgment, a reasonable trier of fact could not

2  find the requisite unlawful standard operating procedure.  (Doc. No. 122 at 37.)  Defendant

3  identifies the alleged standard operating procedure as one in which it forces employees onto leave

4  and then terminates them.  (*Id.* at 28.)  Defendant then argues that the evidence on summary

5  judgment does not bear out such a theory because many of those referred to the Interactive

6  Process Section were already on leaves of absence that were simply recoded, defendant reached

7  out to employees referred to the Employee Relations Department an average of 5.35 times, many

8  employees referred to the Employee Relations Department (27.7%) in fact returned to work, and

9  separations are not reflective of a failure to accommodate.  (*Id.* at 18–19.)

10        In its opposition to defendant's motion for summary judgment, plaintiff argues that there

11  is evidence that defendant has a pattern or practice of:  "(1) immediately placing employees on

12  leave as an accommodation; (2) regularly failing to consider assistive technology as a reasonable

13  accommodation; (3) regularly failing to perform an undue hardship analysis when denying or

14  terminating a reasonable accommodation; and (4) failing to have a policy requiring preference in

15  hiring where reassignment would be a reasonable accommodation."  (Doc. No. 124 at 2.)

16              a.      *Pattern or Practice Legal Standard*

17        "As the Supreme Court explained, pattern-or-practice claims cannot be based on 'sporadic

18  discriminatory acts' but rather must be based on discriminatory conduct that is widespread

19  throughout a company or that is a routine and regular part of the workplace."  *Cherosky v.*

20  *Henderson*, 330 F.3d 1243, 1247 (9th Cir. 2003) (quoting *Teamsters*, 431 U.S. at 336); *see also*

21  *E.E.O.C. v. Allied Sys., Inc.*, 36 F. Supp. 2d 515, 523 (N.D.N.Y. 1999) (same).  "'[T]he definition

22  of a pattern or practice is not capable of a precise mathematical formulation,' and the evidence

23  required to prove a pattern or practice depends on the nature of the case."  *Washington v.*

24  *Matheson Flight Extenders, Inc.*, 440 F. Supp. 3d 1201, 1215 (W.D. Wash. 2020) (quoting *Ste.*

25  *Marie v. E. R. Ass'n*, 650 F.2d 395, 406 (2d Cir. 1981)).  "In cases where a plaintiff lacks direct

26  evidence that an employer adopted a discriminatory policy, the plaintiff often demonstrates a

27  pattern or practice 'through a combination of strong statistical evidence of disparate impact

28  coupled with anecdotal evidence of the employer's intent to treat the protected class unequally.'"

1   *Id.* (quoting *Mozee v. Am. Commercial Marine Serv. Co.*, 940 F.2d 1036, 1051 (7th Cir. 1991)).

2   "But '[i]f there [is] evidence that a policy of discrimination [was] adopted, perhaps two or even

3   one confirmatory act [is] enough.'" *Id.* (quoting *Ste. Marie*, 650 F.2d at 406).

4               b.      *Claims 1–3 Legal Standards*

5        In its first three claims plaintiff asserts:  (1) disability discrimination in violation of 42

6   U.S.C. § 12112 and California Government Code § 12940(a); (2) failure to provide reasonable

7   accommodation in violation of 42 U.S.C. § 12112(b) and California Government Code

8   § 12940(m); and (3) failure to engage in the interactive process in violation of 42 U.S.C.

9   § 12112(b) and California Government Code § 12940(n).

10       Pursuant to the ADA, "[n]o covered entity shall discriminate against a qualified individual

11  on the basis of disability in regard to job application procedures, the hiring, advancement, or

12  discharge of employees, employee compensation, job training, and other terms, conditions, and

13  privileges of employment."  42 U.S.C. § 12112(a).  "[T]he term 'discriminate against a qualified

14  individual on the basis of disability' includes . . . not making reasonable accommodations to the

15  known physical or mental limitations of an otherwise qualified individual with a disability who is

16  an applicant or employee, unless such covered entity can demonstrate that the accommodation

17  would impose an undue hardship on the operation of the business of such covered entity."  42

18  U.S.C. § 12112(b)(5)(A).  "[A] plaintiff/employee (to defeat a defendant/employer's motion for

19  summary judgment) need only show that an 'accommodation' seems reasonable on its face, *i.e.,*

20  ordinarily or in the run of cases."  *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002).  This

21  means an accommodation is "reasonable" if it appears to be "feasible" or "plausible[.]"  *Id.* at

22  402.

23       FEHA separately prohibits discrimination because of disability, California Government

24  Code § 12940(a), failure to provide reasonable accommodation, California Government Code

25  § 12940(m), and failure to engage in the good faith interactive process, California Government

26  Code § 12940(n).  *See Miller v. Dep't of Corr. & Rehab.*, 105 Cal. App. 5th 261, 276 (2024)

27  (distinguishing between the different provisions).  "Section 12940, subdivision (a) prohibits an

28  employer from discriminating against a person 'in compensation or in terms, conditions, or

1  privileges of employment' as the result of physical or mental disability." *Id.* at 274 (quoting Cal.

2  Gov. Code § 12940(a)).  "The employer's motive for any alleged adverse employment action

3  becomes subject to scrutiny only after the 'employee meets this burden' to show the ability to

4  perform the essential functions of the job." *Id.* at 275 (citation omitted).  Section 12940(m)

5  "requires employers to make reasonable accommodation for the known disability of an employee

6  unless doing so would produce undue hardship to the employer's operation." *Id.* at 277 (citation

7  omitted).  "Reasonable accommodations include job restructuring, part-time or modified work

8  schedules, reassignment to a vacant position, and other similar accommodations for individuals

9  with disabilities." *Id.* (citations omitted) (cleaned up).  Section 12940(m) "prohibits an employer

10  from failing 'to engage in a timely, good faith, interactive process with the employee . . . to

11  determine effective reasonable accommodations, if any, in response to a request for reasonable

12  accommodation by an employee . . . with a known physical or mental disability.'" *Id.* at 282

13  (quoting Cal. Gov. Code § 12940(n)).  "[A]n employer cannot be held liable for failing to engage

14  in the interactive process when the employee was in fact offered a reasonable accommodation."

15  *Id.* (citation omitted) (cleaned up).  "Likewise, an employer cannot be held liable for failure to

16  engage in the interactive process where the employee is unable to identify a reasonable

17  accommodation that would have been available had the parties engaged in the interactive

18  process." *Id.* at 282–83.

19                      c.      *Pattern or Practice of Automatic Unpaid Leave*

20          Plaintiff argues that defendant engaged in a pattern or practice of automatically funneling

21  into unpaid leave almost all employees referred to the Interactive Process Section, and this

22  practice violates the ADA and FEHA.  (Doc. No. 130 at 43.)  Indeed, based upon the evidence

23  presented on summary judgment, defendant automatically funnels into unpaid leave almost all

24  employees who were referred to the Interactive Process Section (at least 96%) in order to provide

25  defendant time to engage in the interactive process and has a policy of doing so.  (PUF ¶ 41; PAF

26  ¶ 35; Doc. No. 124-5 at 211; Rocio Ramirez Tr. at 111:10–25.)

27          Unpaid leave can be a reasonable accommodation where the employer engages with the

28  employee to find the most effective accommodation and no other accommodation is available to

1    allow the employee to work or where unpaid leave is requested by the employee.  Otherwise,

2    placing an employee on unpaid leave can qualify as discrimination on the basis of disability.  *See*

3    *Steenmeyer v. Boeing Co.*, 92 F. Supp. 3d 1024, 1031 (W.D. Wash. 2015) ("The fact that unpaid

4    leave may, in certain circumstances and where requested, constitute a reasonable accommodation

5    does not mean that it cannot also be an adverse action, particularly where the employee is placed

6    on unpaid leave involuntarily."); *see also Mois v. Wynn Las Vegas LLC*, 715 F. App'x 600, 601

7    (9th Cir. 2017)[9] ("Wynn has failed to present evidence that it engaged with Mois to 'discover the

8    precise limitations and the types of accommodations which would be most effective' given her

9    injury.  Further, Wynn has not shown that assigning Mois to light duty work, as it had done in the

10   past, would have created an 'undue hardship.'  Therefore, placing Mois on unpaid leave was not a

11   reasonable accommodation.") (citations omitted).  Even putting an employee on unpaid leave to

12   provide the employer time to engage in the interactive process may constitute disability

13   discrimination.  *McGinn v. Hawaii Symphony Orchestra*, 727 F. Supp. 3d 915, 942 (D. Haw.

14   2024) ("Such is the case here, where 'the consequence of the [alleged] failure to accommodate'

15   results in disparate treatment (such as indefinite unpaid leave).") (citation omitted); *Magee v.*

16   *Trader Joe's Co.*, No. 3:18-cv-01956-AC, 2020 WL 9550008, at *11 (D. Or. Sept. 1, 2020)

17   ("Although short period of leave while Trader Joe's assessed whether it could grant Magee the

18   accommodation she requested could be a legitimate, non-discriminatory reason, the issue is

19   whether such leave should have been unpaid.  It is on this issue that Magee goes beyond temporal

20   proximity to establish specific and substantial evidence of pretext to show that a discriminatory or

21   retaliatory reason more likely motivated Trader Joe's actions.  . . .  A reasonable jury could

22   conclude that Trader Joe's was reluctant to grant Magee's accommodation request and placed her

23   immediately on unpaid leave to discourage not only her, but also other employees, from making

24   similar requests."), *report and recommendation adopted in part,* No. 3:18-cv-01956-AC, 2021

25   WL 1550336, at *1 (D. Or. Apr. 20, 2021) (adopting the magistrate judge's finding that the

26   plaintiff had raised a disputed question of material fact concerning being placed involuntarily on

27

28   [9]  Citation to unpublished Ninth Circuit opinions throughout this order is appropriate pursuant to Ninth Circuit Rule 36–3(b).

1    unpaid leave); *see also Dawson v. Akal Sec. Inc.*, 660 F. App'x 504, 506 (9th Cir. 2016)

2    ("AKAL's contractual obligation to conduct a fitness for duty evaluation does provide a

3    'legitimate, nondiscriminatory reason' for placing Dawson on *paid* leave, but AKAL offered no

4    reason for its decision to change Dawson's status from paid to unpaid leave and to leave Dawson

5    in that status for almost two months—an action that contradicts the terms of AKAL's contract

6    with U.S. Customs and Immigration Enforcement.") (emphasis added) (citation omitted).  Here,

7    because the unpaid leave was imposed automatically, it was involuntary and did not follow

8    engagement with the employees to find any other appropriate accommodation.  Therefore, a

9    reasonable trier of fact could find that it qualifies as a pattern or practice of disability

10    discrimination under the ADA.  Accordingly, defendant is not entitled to summary judgment in

11    its favor on the ground that plaintiff cannot establish that it adopted an unlawful standard

12    operating procedure.

13            d.     *Pattern or Practice of Failing to Consider Assistive Technology as a*

14                    *Reasonable Accommodation*

15           Plaintiff argues that defendant regularly failed to consider assistive technology as a

16    reasonable accommodation, and such conduct is a pattern or practice of discrimination under the

17    ADA and FEHA.  (Doc. No. 130 at 41.)  To support this theory, plaintiff offers an expert report,

18    which states that assistive technology is commonly used in comparable settings, yet defendant's

19    interactive process systematically fails to consider assistive technology, and defendant's

20    interactive process results in surprisingly poor outcomes, with few employees who are referred to

21    the Interactive Process Section returning to work.  (Doc. No. 124-5 at 10, 12, 21.)  The expert

22    further stated that defendant's supervisory employees described the only permanent

23    accommodation as reassignment or stated that a stool, an example of assistive technology, would

24    not be provided without a specific request from the employee.  (Doc. No. 130-2 at 8.)

25           Defendant argues that this purported policy is too abstract to qualify as a pattern or

26    practice of disability discrimination because plaintiff has not pointed to a statistically significant

27    portion of employees for whom "assistive technology" would have constituted a reasonable

28    accommodation.  (Doc. No. 143 at 23.)

Under the ADA, "the duty to accommodate 'is a "continuing" duty that is "not exhausted by one effort."'" *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1138 (9th Cir. 2001). "Thus, the employer's obligation to engage in the interactive process extends beyond the first attempt at accommodation and continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed." *Id.* For instance, an employer has an affirmative duty under the ADA to explore further methods of accommodation before terminating a qualified individual with a disability. *Id.* at 1137.

"A blanket failure to engage in *any* interactive process or to make *any* reasonable accommodations can . . . constitute a standard operating procedure resulting in unlawful discrimination." *FedEx Ground Package Sys., Inc.*, 158 F. Supp. 3d at 404. Furthermore, "the defendant employer must consider more than just what the plaintiff employee proposes." *Mlsna v. Union Pac. R.R. Co.*, 975 F.3d 629, 638 (7th Cir. 2020). Barring outright a certain type of reasonable accommodation constitutes a policy or practice of disability discrimination. *City & Cnty. of Denver*, 943 F. Supp. at 1312–13 ("In the circumstances, I conclude the United States has succeeded in establishing that the City and County of Denver's policy or practice barring the reassignment of police officers with disabilities to vacant positions for which they are qualified discriminates against 'qualified individuals with disabilities' covered by Title I of the ADA."), *aff'd sub nom. Davoll*, 194 F.3d at 1132 ("The logic of *Teamsters* similarly applies to ADA cases in which an employer has a set policy against a particular type of reasonable accommodation, or against such accommodation generally."). In the same vein, a systematic failure to *consider* a particular kind of reasonable accommodation can also constitute a pattern or practice of disability discrimination. 42 U.S.C. § 12111(9)(B) ("The term 'reasonable accommodation' may include . . . reassignment to a vacant position, acquisition or modification of equipment or devices[.]"); *Smith v. Midland Brake, Inc., a Div. of Echlin, Inc.*, 180 F.3d 1154, 1167 (10th Cir. 1999) ("[A]n employer must not only consider but must also implement if appropriate" reasonable accommodations listed in 42 U.S.C. § 12111(9)(B).); *City & Cnty. of Denver*, 943 F. Supp. at 1312 ("I conclude the ADA's reasonable accommodation requirement includes reassignment and

28

1    imposes a duty on employers to consider that avenue.  Here, the City has not considered

2    reassignment of disabled police officers to Career Service positions because it maintains its policy

3    is not to transfer disabled police officers or other members of the Classified Service to the Career

4    Service.  This is in violation of ADA's reasonable accommodation requirement.").

5         Here, on summary judgment plaintiff offers statistical evidence of a pattern or practice of

6    failing to consider assistive technology; according to plaintiff's expert, defendant's interactive

7    process results in surprisingly poor outcomes, and assistive technologies are common in similar

8    settings yet rarely, if ever, used by defendant.  (Doc. No. 130-2 at 7.)  Plaintiff also offers

9    anecdotal evidence that defendant fails to consider assistive technology.  (*Id.* at 8.)

10        Based on this statistical and anecdotal evidence, *Washington*, 440 F. Supp. 3d at 1215, a

11   reasonable trier of fact could find that defendant had a pattern or practice of failing to consider

12   "acquisition or modification of equipment or devices"—here, assistive technologies.  42 U.S.C.

13   § 12111(9)(B).  While defendant need not document consideration of accommodations wholly

14   irrelevant to respective employees' disabilities, the statistical disparities raised by plaintiff's

15   expert could support the conclusion that assistive technologies are reasonable on their face for

16   some number of defendant's employees.  *Barnett*, 535 U.S. at 401 (noting that "a

17   plaintiff/employee (to defeat a defendant/employer's motion for summary judgment) need only

18   show that an 'accommodation' seems reasonable on its face, *i.e.,* ordinarily or in the run of

19   cases").

20        Therefore, the court will deny defendant's motion for summary judgment in its favor

21   based on its argument that plaintiff has not come forward with evidence of an unlawful pattern or

22   practice related to assistive technology.

23              e.    *Pattern or Practice of Failing to Consider Undue Hardship*

24        Plaintiff also argues that defendant has a pattern or practice of regularly failing to perform

25   an undue hardship analysis when denying or terminating a reasonable accommodation.  (Doc. No.

26   124 at 2.)

27        "In determining if a requested accommodation would pose an undue hardship, the jury can

28   only consider the evidence and information available to the employer at the time."  *O'Hailpin v.*

*Hawaiian Airlines, Inc.*, No. 22-cv-00532-HG-WRP, 2025 WL 1549442, at *4 (D. Haw. May 30, 2025).  Here, plaintiff offers no support for the notion that an employer must conduct an undue hardship analysis at the time the employee is denied accommodation.  Rather, undue hardship is a "defense" that the defendant may raise during litigation.  *Shirley v. Washington State Dep't of Fish & Wildlife*, No. 3:23-cv-05077-DGE, 2025 WL 1374977, at *12 (W.D. Wash. May 9, 2025).  Furthermore, the undue hardship analysis does not come into play unless the plaintiff "sets forth a facially reasonable accommodation[.]"  *Mandujano v. Geithner*, No. 10-cv-01226 LB, 2011 WL 2550621, at *9 n.5 (N.D. Cal. June 27, 2011); *see also Raine v. City of Burbank*, 135 Cal. App. 4th 1215, 1227 (2006) ("The question presented, however, is not whether assigning Raine to the front desk on a permanent basis imposes an undue hardship, but whether the accommodation requested is reasonable and thus required in the first place.").  Therefore, the court will grant defendant's motion for summary judgment in its favor as to plaintiff's claims for (1) disability discrimination, (2) failure to accommodate, and (3) failure to engage in the interactive process to the extent those claims are predicated on the theory that defendant failed to perform an undue hardship analysis when denying or terminating a reasonable accommodation.

   f.  *Pattern or Practice of Failing to Provide Preference in Hiring Where Reassignment Would Be a Reasonable Accommodation*

   Finally, plaintiff argues that defendant has a standard operating procedure of "failing to have a policy requiring preference in hiring where reassignment would be a reasonable accommodation."  (Doc. No. 124 at 2.)

   The ADA identifies "reassignment to a vacant position[]" as a reasonable accommodation. 42 U.S.C. § 12111(9)(B).  In the absence of undue hardship (or a seniority system), a disabled employee should be given the priority for reassignment over non-disabled applicants.  *Barnett v. U.S. Air, Inc.,* 228 F.3d 1105, 1121 (9th Cir. 2000), *rev'd on other grounds, Barnett,* 535 U.S. at 398, 404 (finding that disruption of an established seniority system is presumed to be an unreasonable accommodation due to "employees' expectations of consistent, uniform treatment" but "[t]he simple fact that an accommodation would provide a 'preference'—in the sense that it would permit the worker with a disability to violate a rule that others must obey—cannot, *in and*

1    *of itself,* automatically show that the accommodation is not 'reasonable'"); *see also Betti v. Kaiser*

2    *Permanente*, No. 03-cv-02678-DFL-DAD, 2005 WL 3844212, at *4 (E.D. Cal. July 25, 2005)

3    (citing *Barnett*, 228 F.3d at 1121), *on reconsideration sub nom. Betti v. Kaiser Found. Health*

4    *Plan, Inc.*, No. 03-cv-02678-DFL-DAD, 2006 WL 355148 (E.D. Cal. Feb. 15, 2006).

5       The evidence before the court on summary judgment reflects disputed issues of material

6    fact with respect to whether defendant engaged in a pattern or practice of failing to give disabled

7    employees priority in reassignment.  (PUF ¶¶ 97–100; Doc. Nos. 125-5 at 37; 125-17 at 7; 125-20

8    at 19–21; Kari Sanchez Tr. at 29:6–16.)  For instance, one supervisory employee stated that

9    positions would be awarded based on seniority despite the fact that Grimmway does not have an

10    established seniority system.  (PUF ¶¶ 98–99; Doc. No. 125-17 at 7); *see Barnett*, 535 U.S. at 405

11    (finding that disruption to a seniority system can be proven to be a reasonable accommodation if

12    the employer frequently changes the seniority system to the point where "one more departure,

13    needed to accommodate an individual with a disability, will not likely make a difference").  In

14    contrast, another employee testified at deposition that she would inform HR that the disabled

15    candidate "should be considered for the job before others, basically."  (Doc. No. 125-5 at 37.)

16       Given this inconsistent evidence regarding the reassignment process—some of which

17    supports the conclusion that referred employees were not prioritized in reassignment and some of

18    which supports the conclusion that referred employees were prioritized in the hiring process—

19    there exists a dispute of material fact regarding whether defendant engaged in a pattern or practice

20    of failing to give disabled employees priority in reassignment.  Accordingly, defendant's motion

21    for summary judgment in its favor in this regard will be denied.

22       4.  Retaliation (Claim 4)

23       In moving for summary judgment defendant next argues that plaintiff's fourth claim for

24    retaliation under the ADA and FEHA cannot be established on a pattern-or-practice basis because

25    plaintiff cannot establish, categorically, that the alleged group members were subject to an

26    adverse employment action.  (Doc. No. 122 at 51.)  Plaintiff argues that defendant has a standard

27    operating practice of automatically placing employees on an unpaid leave of absence when they

28    /////

1  demonstrate a need for reasonable accommodation, and this unpaid leave of absence practice

2  constitutes an adverse employment action.  (Doc. No. 130 at 47.)

3              a.    *FEHA*

4       Pursuant to FEHA regulation, "[w]hen an employee can work with a reasonable

5  accommodation other than a leave of absence, an employer may not require that the employee

6  take a leave of absence."  Cal. Code Regs. tit. 2, § 11068(c).  In addition, "an employer may not

7  bow out of the interactive process by granting one type of accommodation—such as a leave of

8  absence—when other accommodations may exist and allow the employee to perform her job

9  more effectively."  *Martinez v. Costco Wholesale Corp.*, No. 19-cv-01195-WVG, 2023 WL

10 1931836, at *16 (S.D. Cal. Feb. 10, 2023), *appeal dismissed,* No. 23-55245, 2023 WL 4043951

11 (9th Cir. Apr. 4, 2023).

12      Here, in light of the evidence before the court on summary judgment, it cannot reasonably

13 be disputed that defendant automatically funneled into unpaid leave almost all employees who

14 were referred to the Interactive Process Section in order to provide defendant time to engage in

15 the interactive process and that defendant had a policy of doing so.  (PAF ¶ 35; Rocio Ramirez

16 Tr. at 111:10–25.)  It is also undisputed that 13.7% of employees who were referred to the

17 Interactive Process Section from the Workers' Compensation Department and placed on leave

18 upon transfer had been accommodated in some form of light or modified work at the time of their

19 referral.  (PUF ¶ 34.)  Based on the undisputed evidence, defendant had a policy of requiring

20 apparently disabled employees to take a leave of absence upon referral to the Interactive Process

21 Section even where other reasonable accommodations existed.  This "failure to comply with

22 section 11068(c) constitutes [an] 'adverse employment action' when it leads to loss of income."

23 *Ravel*, 228 F. Supp. 3d at 1097.  Because the leave was unpaid, it resulted in loss of income and

24 qualifies as an adverse employment action.  Therefore, defendant is not entitled to summary

25 judgment in its favor with regard to plaintiff's retaliation claim under FEHA.

26              b.    *The ADA*

27      For purposes of the ADA, the Ninth Circuit "define[s] 'adverse employment action'

28 broadly."  *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 847 (9th Cir. 2004)

1   (citations omitted).  "[A]n adverse employment action is one that 'materially affect[s] the

2   compensation, terms, conditions, or privileges of . . . employment.'"  *Davis v. Team Elec. Co.*,

3   520 F.3d 1080, 1089 (9th Cir. 2008) (citation omitted).  "Whether a particular [action] is

4   materially adverse depends upon the circumstances of the particular case, and should be judged

5   from the perspective of a reasonable person in the plaintiff's position, considering all the

6   circumstances."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71 (2006) (citation

7   omitted).  If the plaintiff establishes a *prima facie* case of retaliation, including that the aggrieved

8   employee was subject to an adverse employment action, then "the burden shifts to [the defendant]

9   to proffer a legitimate non-discriminatory reason for placing [the employee] on leave."  *Magee*,

10  2020 WL 9550008, at *11.

11         As noted above, "unpaid leave can . . . constitute an adverse employment action . . . ,

12  especially where the unpaid leave was both involuntary and indefinite."  *McGinn*, 727 F. Supp. 3d

13  at 937.  On the other hand, unpaid leave may constitute a reasonable accommodation, *Ansonia*

14  *Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70 (1986), "*when it is requested*," *Dawson*, 660 F. App'x

15  at 506.  Where the employer fails to engage in the interactive process prior to placing the

16  employee on unpaid leave and does not consider whether an alternative to unpaid leave would

17  create undue hardship, placing the employee on unpaid leave is not considered a reasonable

18  accommodation.  *Mois*, 715 F. App'x at 601.  Here, defendant placed employees referred to the

19  Interactive Process Section on unpaid leave automatically, purportedly to allow defendant time to

20  evaluate the employees' accommodation requests.  (PUF ¶ 28.)  Because this process was

21  automatic, whether the employee requested leave was irrelevant to defendant's decision, and

22  /////

23  /////

24  /////

25  /////

26  /////

27  /////

28  /////

there was no opportunity for defendant to engage in the interactive process[10] or to consider whether an alternative accommodation would create undue hardship.  Further, defendant's purported need for time to evaluate the employees' accommodation requests does not necessarily justify the imposition of *unpaid* leave.  *Dawson*, 660 F. App'x at 506 (finding that need to conduct a fitness for duty evaluation would have justified paid leave, but a triable issue of fact remained regarding whether it justified the imposition of unpaid leave that lasted for almost two months); *Magee*, 2020 WL 9550008, at *11 ("Although short period of leave while Trader Joe's assessed whether it could grant Magee the accommodation she requested could be a legitimate, non-discriminatory reason, the issue is whether such leave should have been unpaid."), *report and recommendation adopted in part,* 2021 WL 1550336, at *1 (adopting the magistrate judge's finding that the plaintiff had raised a disputed issue of material fact concerning being placed involuntarily on unpaid leave).  Therefore, the court finds that in this case whether unpaid leave constitutes an unjustified adverse employment action under the ADA is a triable issue of fact that only the fact finder can resolve.

###### 5.    Unlawful Interference (Claim 5)

Defendant argues that summary judgment in its favor should be granted as to plaintiff's claim for unlawful interference because such a claim requires that the defendant coerced, intimidated, or threatened its employees for exercising their rights under the ADA or that the defendant interfered with its employees' exercise of such rights.  (Doc. No. 122 at 55.)

/////

---

[10]  Defendant argues that there may have been prior attempts to accommodate the employee, for instance, through the Workers' Compensation Department.  However, the evidence on summary judgment reveals that the two departments are so independent that the Interactive Process Section is not aware of the accommodations given to employees prior to referral.  (Rocio Ramirez Tr. at 161:21–162:3.)  Therefore, defendant's decision to place employees on leave when referred to the Interactive Process Section cannot be justified by any prior efforts to accommodate.  *Cf. Jackson v. Canyon Cnty.*, No. 1:13-cv-00503-REB, 2016 WL 5745087, at *6 (D. Idaho Sept. 30, 2016) ("Defendants' arguments that they engaged in an interactive process to provide Jackson with a reasonable accommodation largely focus on actions taking place while Jackson's worker's compensation claim was open.  . . .  Even if true, and construing this evidence in Jackson's favor at this stage of the litigation, such actions were unrelated to an ADA claim in that the record does not indisputably show that an interactive process followed the issuance of Dr. Daines's report, which, again, prompted the end to Jackson's worker's compensation claim.").

1    Defendant asserts that plaintiff has not come forward with evidence that defendant did so here.

2    (*Id.*)

3            In its opposition, plaintiff argues that defendant's practice of automatically placing

4    employees referred to the Interactive Process Section on leave tended to chill the employees'

5    willingness to exercise their statutory rights, and that is all that is required to prove unlawful

6    interference.  (Doc. No. 130 at 50–52.)

7            The ADA prohibition on unlawful interference states as follows:

8                    It shall be unlawful to coerce, intimidate, threaten, or interfere with
                 any individual in the exercise or enjoyment of, or on account of his
9                or her having exercised or enjoyed, or on account of his or her having
                 aided or encouraged any other individual in the exercise or
10               enjoyment of, any right granted or protected by this chapter.

11   42 U.S.C.A. § 12203(b).  Interference should be given a "broad scope" such that it "reach[es] all

12   practices which have the effect of interfering with the exercise of rights" but "the ADA's

13   interference provision does not bar any action whatsoever that in any way hinders a member of a

14   protected class."  *Brown v. City of Tucson*, 336 F.3d 1181, 1191–93 (9th Cir. 2003) (citation

15   omitted).  "[T]he sort of coercion, intimidation, threats, or interference contemplated in

16   § 12203(b) are largely similar to the adverse employment actions requirement applied to ADA

17   retaliation and discrimination claims."  *Santos v. Cnty. of Humboldt*, No. 22-cv-07485-RMI, 2023

18   WL 6882748, at *7 (N.D. Cal. Oct. 18, 2023).  Though the Ninth Circuit has declined to define

19   interference, *Brown*, 336 F.3d at 1192, one district court in this circuit has found that an action by

20   an employer that "would deter a reasonable employee from participating in a protected activity"

21   constitutes "interference," *Colasanti v. City of Portland*, No. 3:19-cv-00443-YY, 2021 WL

22   4317286, at *6 (D. Or. Aug. 19, 2021), *report and recommendation adopted*, 2021 WL 4317667

23   (D. Or. Sept. 20, 2021).  In other words, where "[t]he approach taken by [the employer] would

24   give a person in [the employee's] position pause in seeking to enforce her right to obtain a

25   reasonable accommodation for her handicap," the employer's approach constitutes interference.

26   *Castellano v. Access Premier Realty, Inc.*, 181 F. Supp. 3d 798, 809 (E.D. Cal. 2016).  An action

27   that "discourages [individuals] from seeking an accommodation and punishes those who do

28   receive accommodations" constitutes interference as well.  *L. Sch. Admission Council, Inc.*, 896

F. Supp. 2d at 870 (denying a motion to dismiss a claim for unlawful interference where the plaintiff alleged that a testing administrator had a practice of flagging on applicants' score reports that they had received the accommodation of extra time).

Here, as discussed previously in addressing plaintiff's claim of retaliation under the ADA, a reasonable trier of fact could find that placing employees referred to the Interactive Process Section on automatic unpaid leave constitutes an adverse employment action. Further, automatic unpaid leave for those seeking accommodations reduces the compensation paid to those employees as compared to those who did not pursue reasonable accommodations, thereby operating to deter reasonable employees from seeking accommodations or from continuing to pursue accommodations. Where such a leave practice does not succeed in deterring employees from seeking accommodations, it effectively punishes them for doing so by reducing their compensation. Based upon the evidence submitted on summary judgment, a reasonable finder of fact could find that an action that deters and punishes in this way qualifies as interference for purposes of the statute. *See Colasanti*, 2021 WL 4317286, at *6; *Castellano*, 181 F. Supp. 3d at 809; *L. Sch. Admission Council, Inc.*, 896 F. Supp. 2d at 870. Therefore, defendant's motion for summary judgment in its favor as to plaintiff's claim for interference will be denied.

      6.    <u>Failure to Take All Reasonable Steps to Prevent Discrimination, and Harassment and Retaliation (Claims 6–7)</u>

Defendant seeks summary judgment in its favor as to plaintiff's claims for failure to take all reasonable steps to prevent discrimination and harassment and retaliation (claims 6–7), arguing that these claims are derivative of plaintiff's underlying claim of disability discrimination, retaliation, or sexual harassment. (Doc. No. 122 at 56.) In opposition, plaintiff CRD argues that it can bring an independent failure to prevent claim whether or not it prevails on its underlying claim of discrimination. (Doc. No. 130 at 53.) In any event, because the court has already indicated that it will deny defendant's motion for summary judgment as to plaintiff's disability discrimination claim, defendant's argument in this regard fails.

Defendant also argues for summary judgment in its favor as to plaintiff's theory that defendant failed to take reasonable steps to prevent sexual harassment, arguing that plaintiff

1    confirmed in the parties' meet and confer session that it had abandoned its pursuit of that theory

2    of liability on a group basis.  (Doc. No. 122 at 56.)  Neither plaintiff's opposition to defendant's

3    motion for summary judgment nor plaintiff's own motion for summary judgment address the

4    specific theory of liability based upon a failure to take reasonable steps to prevent sexual

5    harassment, nor is the court aware of any evidence submitted on summary judgment supporting

6    this theory.  (Doc. Nos. 124-1 at 39–40; 130 at 52–53.)  Therefore, the court will grant

7    defendant's motion for summary judgment in its favor as to plaintiff's claim based on the narrow

8    theory that defendant failed to take reasonable steps to prevent sexual harassment.

9           7.   <u>Punitive Damages</u>

10          Defendant also seeks summary judgment in its favor as to plaintiff's request for punitive

11   damages, arguing that punitive damages would only be available if plaintiff could prove, under

12   the ADA, "malice or reckless indifference," and, under FEHA, "oppression, fraud, or malice."

13   (Doc. No. 122 at 57.)

14          Under the ADA, with certain limited exceptions, "intentional discrimination is enough to

15   establish punitive damages liability."  *Passantino v. Johnson & Johnson Consumer Prods., Inc.*,

16   212 F.3d 493, 515 (9th Cir. 2000).

> Punitive damages may be awarded to a plaintiff pursuant to 42
> U.S.C. § 1981a(b)(1) where an employer engaged in a
> discriminatory practice with "malice or with reckless indifference
> to the [plaintiff's] federally protected rights."  *Kolstad v. Am.
> Dental Ass'n*, 527 U.S. 526, 535, 119 S. Ct. 2118, 144 L.Ed.2d 494
> (1999); 42 U.S.C. § 1981a(b)(1).  "The terms 'malice' or 'reckless
> indifference' pertain to the employer's knowledge that it may be
> acting in violation of federal law, not its awareness that it is
> engaging in discrimination."  *Kolstad*, 527 U.S. at 535, 119 S. Ct.
> 2118.  However, an "employer may not be vicariously liable for the
> discriminatory employment decisions of managerial agents where
> these decisions are contrary to the employer's 'good-faith efforts to
> comply with Title VII.' "  *Id.* at 545, 119 S. Ct. 2118 (quoting
> *Kolstad v. Am. Dental Ass'n*, 139 F.3d 958, 974 (D.C. Cir. 1998),
> *vacated*, 527 U.S. 526, 119 S. Ct. 2118, 144 L. Ed. 2d 494 (1999)).

25   *E.E.O.C. v. Covius Servs., LLC*, 759 F. Supp. 3d 1073, 1081–82 (E.D. Wash. 2024).

26          Punitive damages may be recovered under FEHA "[i]n an action for the breach of an

27   obligation not arising from contract, where it is proven by clear and convincing evidence that the

28   defendant has been guilty of oppression, fraud, or malice."  Cal. Civ. Code § 3294(a).  "'Malice'

1   means conduct which is intended by the defendant to cause injury to the plaintiff or despicable

2   conduct which is carried on by the defendant with a willful and conscious disregard of the rights

3   or safety of others." Cal. Civ. Code § 3294(c)(1). "'Oppression' means despicable conduct that

4   subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." Cal.

5   Civ. Code § 3294(c)(2). "An employer shall not be liable for [punitive] damages . . . , based upon

6   acts of an employee of the employer, unless the employer had advance knowledge of the

7   unfitness of the employee and employed him or her with a conscious disregard of the rights or

8   safety of others or authorized or ratified the wrongful conduct for which the damages are awarded

9   or was personally guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(b). "With

10  respect to a corporate employer, the advance knowledge and conscious disregard, authorization,

11  ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or

12  managing agent of the corporation." *Id.* "Corporate ratification in the punitive damages context

13  requires actual knowledge of the conduct and its outrageous nature." *Coll. Hosp. Inc. v. Superior*

14  *Ct.*, 8 Cal. 4th 704, 726 (1994), *as modified* (Nov. 23, 1994).

15          The "clear and convincing evidence" standard "requires a finding of high probability so

16  clear as to leave no substantial doubt; sufficiently strong to command the unhesitating assent of

17  every reasonable mind." *Scott v. Phoenix Sch., Inc.*, 175 Cal. App. 4th 702, 715 (2009) (internal

18  quotation marks and ellipsis omitted). However, the "clear and convincing evidence" standard

19  "does not impose on a plaintiff the obligation to 'prove' a case for punitive damages at summary

20  judgment . . . though the higher evidentiary standard must be taken into account." *Spinks v.*

21  *Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1053 (2009). Lastly, "[i]n the

22  usual case, the question of whether the defendant's conduct will support an award of punitive

23  damages is for the trier of fact, 'since the degree of punishment depends on the peculiar

24  circumstances of each case.'" *Id.* (quoting *Hannon Engineering, Inc. v. Reim*, 126 Cal. App. 3d

25  415, 431 (1981)); *see also Capote v. CSK Auto, Inc.*, No. 12-cv-02958-JST, 2014 WL 1614340,

26  at *12 (N.D. Cal. Apr. 22, 2014) (same).

27          Defendant argues that even if it were found to have fallen short of statutory requirements,

28  its good faith efforts to accommodate employees prevent plaintiff from being awarded punitive

1    damages.  (Doc. No. 122 at 57.)  In its opposition, plaintiff argues that the evidence supporting

2    defendant's argument is both disputed and insufficient as a matter of law, and intentional

3    discrimination is enough to establish punitive damages liability under the ADA.  (Doc. No. 130 at

4    54.)  Under FEHA, plaintiff argues that where the defendant's officer, director, or managing

5    agent ratifies—which requires actual knowledge—the violation of the law, the requisite showing

6    for punitive damages has been made.  (*Id.*)  Plaintiff then offers evidence that managing agent

7    Sara Oliver reviewed Interactive Process files with Rocio Ramirez and her supervisor, Sandra

8    Bloxom, which a reasonable trier of fact could interpret as establishing that Ms. Oliver was aware

9    of and ratified defendant's systematic failure to engage in the interactive process and provide

10   reasonable accommodations.  (*Id.* at 55.)  In reply, defendant argues that there was nothing for

11   defendant's personnel to be aware of since defendant did not engage in unlawful standard

12   operating procedures.  (Doc. No. 143 at 31.)  Defendant also disputes that Ms. Oliver "often"

13   reviewed Interactive Process files.  (Doc. No. 143-3 at 25.)

14          Viewing the evidence in the light most favorable to plaintiff, Ms. Oliver is one of two

15   supervisors who were asked to review certain Interactive Process files with Rocio Ramirez when

16   the file was complicated or where Rocio Ramirez asked for additional assistance.  (Sandra

17   Bloxom Tr. at 34:22–40:23.)

18          For purposes of FEHA, a reasonable finder of fact could interpret this evidence regarding

19   the review process as supporting the conclusion that Ms. Oliver had actual knowledge of any

20   systematic violations of FEHA and ratified them.  *See* Cal. Civ. Code § 3294(b).  Further, the

21   court cannot conclude that no reasonable trier of fact could find clear and convincing evidence of

22   "willful and conscious disregard" of the group's rights or "cruel and unjust hardship in conscious

23   disregard" of their rights.  *See* Cal. Civ. Code. § 3294(c)(1)–(2).  Rather, this is an example of the

24   typical case, "in which an assessment of whether Plaintiff's evidence can clear the high bar

25   necessary to recover punitive damages must await the presentation of a full factual record at

26   trial."  *Rezvan v. Philips Elecs. N. Am. Corp.*, No. 15-cv-04767-HSG, 2016 WL 8193160, *11

27   (N.D. Cal. Dec. 15, 2016) (citing *Spinks*, 171 Cal. App. 4th at 1053).

28   /////

1    As for defendant's arguments to the contrary, because the court has already concluded that

2  defendant's motion for summary judgment regarding three alleged systemic violations must be

3  denied, defendant's argument that there are no unlawful standard operating procedures also fails

4  on summary judgment.  Further, even if it were established that Ms. Oliver does not "often"

5  review Interactive Process files, a reasonable trier of fact could find that a near-universal policy

6  of placing employees on unpaid leave would be apparent to her.

7    Similarly, for purposes of the ADA, "in general, intentional discrimination is enough to

8  establish punitive damages liability." *Passantino*, 212 F.3d at 515.  Defendant's only argument

9  that applies uniquely to the ADA is that it made good faith efforts to comply with that statute.

10  (Doc. No. 122 at 57.)  The purported good faith efforts at issue include "compliant written

11  policies, . . . a dedicated, multi-departmental approach . . ., and that Ms. Ramirez in the IP Section

12  makes good faith efforts to engage with employees referred to her and to accommodate them,

13  even if such efforts are occasionally unsuccessful."  (*Id.*)

14    When establishing intentional discrimination under the ADA on the part of a corporation

15  "in the punitive damages context, an employer may not be vicariously liable for the

16  discriminatory employment decisions of managerial agents where these decisions are contrary to

17  the employer's 'good-faith efforts to comply with'" the ADA.  *Kolstad*, 527 U.S. at 545.  This

18  constitutes an affirmative defense that the defendant may raise.  *Hemmings v. Tidyman's Inc.*, 285

19  F.3d 1174, 1197 (9th Cir. 2002).  This affirmative defense applies to "punitive damages liability

20  when [the defendant] ha[s] a bona fide policy against discrimination, regardless of whether or not

21  the prohibited activity engaged in by their managerial employees involved a tangible employment

22  action." *Passantino*, 212 F.3d at 516.  However, where the defendant attempts to "invoke the

23  good faith defense" by citing "to its written materials forbidding" the unlawful discrimination and

24  its anti-discrimination "procedures as conclusive evidence that it acted in good faith and was thus

25  undeserving of punitive damages[,] . . . it is well established that" such evidence is insufficient to

26  obtain summary judgment as to the issue of punitive damages because "it is insufficient for an

27  employer simply to have in place anti-[discrimination] policies; it must also implement them."

28  *Swinton v. Potomac Corp.*, 270 F.3d 794, 810–11 (9th Cir. 2001).  Here, where there are disputed

1    issues of material fact as to whether defendant engages in patterns or practices of disability

2    discrimination, a reasonable finder of fact could conclude that defendant does not implement its

3    policies. *See id.*  As for defendant's argument regarding the good faith of Ms. Ramirez, the court

4    is not persuaded that purported good faith efforts of a single employee should be imputed to the

5    employer where the result of such imputation would be to shield the employer from that same

6    employee's purported violations of the ADA.

7        Therefore, defendant's motion for summary judgment in its favor as to plaintiff's claim

8    for punitive damages will also be denied.

9    **C.    Plaintiff's Motion for Summary Judgment**

10       1.    Disability Discrimination Pursuant to FEHA (Claim 1)

11       Plaintiff argues in its cross-motion for summary judgment that it is entitled to judgment in

12   its favor on its first claim of disability discrimination under FEHA. (Doc. No. 124-1 at 31.)

13   Plaintiff supports this argument with evidence of the same purported patterns or practices

14   addressed above—that defendant (1) immediately places employees on leave as an

15   accommodation; (2) regularly fails to consider assistive technology as a reasonable

16   accommodation; (3) regularly fails to perform an undue hardship analysis when denying or

17   terminating a reasonable accommodation; and (4) fails to have a policy requiring preference in

18   hiring where reassignment would be a reasonable accommodation.

19              a.    *Pattern or Practice of Automatic Unpaid Leave*

20       Plaintiff argues that defendant engaged in a pattern or practice of automatically funneling

21   into unpaid leave almost all employees referred to the Interactive Process Section of the

22   Employee Relations Department, and that this practice constituted disability discrimination

23   pursuant to FEHA.  (Doc. No. 130 at 43.)

24       To state a *prima facie* case for disability discrimination under FEHA, an individual

25   plaintiff typically must show that they suffer from a disability, are a qualified individual, and

26   were subjected to an adverse employment action because of their disability.  *Ravel*, 228 F. Supp.

27   3d at 1095.  Here, at this first phase of the *Teamsters* framework, the government need only show

28   that one group member has a disability and is a qualified individual under FEHA.  Above, the

1    court has found that it is undisputed that at least one group member has a disability and is a

2    qualified individual under FEHA.  *See id.* (noting that FEHA defines disability more broadly than

3    does the ADA and that the qualified individual analysis is the same across the two statutes).

4         As for the final element, an adverse employment action, the court has already found that

5    for purposes of plaintiff's claim of retaliation, pursuant to FEHA, defendant's pattern or practice

6    of placing almost all referred employees on unpaid leave when, in many cases, there were other

7    reasonable accommodations available, violated California Code of Regulations, Title 2,

8    § 11068(c) and constituted an adverse employment action.  *See Ravel*, 228 F. Supp. 3d at 1097.

9    Because this undisputed pattern or practice constitutes an adverse employment action, defendant

10   engaged in "disability discrimination" for purposes of the first phase of the *Teamsters* inquiry.

11   *Ravel*, 228 F. Supp. 3d at 1097.

12        Defendant argues that there is a dispute of material fact regarding this theory of disability

13   discrimination because efforts were made to accommodate employees in the Workers'

14   Compensation Department prior to their referral to the Interactive Process Section.  (Doc. No. 132

15   at 33.)  Any such evidence might matter if, prior to referral to the Interactive Process Section, the

16   Workers' Compensation Department determined that there were no reasonable accommodations

17   available other than leave.  But defendant has admitted that was not the case for at least 13.7% of

18   those referred from the Workers' Compensation Department to the Interactive Process Section.

19   (PUF ¶ 34.)  For that 13.7%, the Workers' Compensation Department determined that a

20   reasonable accommodation other than leave existed.  (*Id.*)  Yet the Interactive Process Section

21   nonetheless placed those employees on leave upon transfer.

22        Accordingly, the court will grant plaintiff's motion for summary judgment in its favor as

23   to its first claim for disability discrimination to the extent that claim is premised on FEHA and

24   California Code of Regulations, Title 2, § 11068(c), and for purposes of the liability phase of the

25   *Teamsters* framework only.

26   /////

27   /////

28   /////

42

1           b.     *Pattern or Practice of Failing to Consider Assistive Technology as a*

2               *Reasonable Accommodation*

3        In moving for summary judgment, plaintiff also argues that defendant's consistent failure

4 to consider assistive technology is a pattern or practice that constitutes disability discrimination

5 under FEHA. While failure to consider assistive technology may constitute a failure to engage in

6 the interactive process or a failure to accommodate under FEHA, disability discrimination is a

7 distinct claim with different requirements, including an adverse employment action. "The refusal

8 to participate in the interactive process or refusal to provide a reasonable accommodation 'do not

9 constitute "adverse employment actions" in the context of a claim of discrimination.'" *Miller*,

10 105 Cal. App. 5th at 276 (citation omitted). Since failure to consider a reasonable

11 accommodation, such as assistive technology, does not constitute an adverse employment action,

12 the court will deny plaintiff's motion for summary judgment as to its first claim of disability

13 discrimination to the extent it is premised on FEHA and an alleged failure to consider assistive

14 technology.

15           c.     *Pattern or Practice of Failing to Consider Undue Hardship*

16        Plaintiff next argues that defendant has a pattern or practice of regularly failing to perform

17 an undue hardship analysis when denying or terminating a reasonable accommodation. (Doc. No.

18 124 at 2.) Pursuant to FEHA, undue hardship is an excuse for a defendant's failure to "make

19 reasonable accommodation(s)[.]" Cal. Code Regs. tit. 2, § 11068(a) ("An employer or other

20 covered entity has an affirmative duty to make reasonable accommodation(s) for the disability of

21 any individual applicant or employee if the employer or other covered entity knows of the

22 disability, unless the employer or other covered entity can demonstrate, after engaging in the

23 interactive process, that the accommodation would impose an undue hardship."). Plaintiff does

24 not argue, nor can it, that failure to engage in undue hardship analysis is an adverse employment

25 action for purposes of a disability discrimination claim. *Cf. Miller*, 105 Cal. App. 5th at 276

26 ("The refusal to participate in the interactive process or refusal to provide a reasonable

27 accommodation 'do not constitute "adverse employment actions" in the context of a claim of

28 /////

1  discrimination.'") (citation omitted).  Therefore, plaintiff's motion for summary judgment will be

2  denied as to this aspect of its disability discrimination claim.

3          d.      *Pattern or Practice of Failing to Provide Preference in Hiring Where*

4                  *Reassignment Would Be a Reasonable Accommodation*

5          Finally, plaintiff argues that defendant has a standard operating procedure of "failing to

6  have a policy requiring preference in hiring where reassignment would be a reasonable

7  accommodation."  (Doc. No. 124 at 2.)  Indeed, "[t]he employee with a disability is entitled to

8  preferential consideration of reassignment to a vacant position over other applicants and existing

9  employees."  Cal. Code Regs. tit. 2, § 11068.  For the same reasons discussed above, there is a

10  dispute of material fact regarding whether defendant engaged in a pattern or practice of failing to

11  give disabled employees priority in reassignment.  Therefore, plaintiff's motion for summary

12  judgment in its favor will be denied in this regard.

13          2.      Failure to Take All Reasonable Steps to Prevent Discrimination (Claim 6)

14          Plaintiff argues that summary judgment should be granted in its favor as to its claim for

15  failure to take all reasonable steps to prevent discrimination.  (Doc. No. 124-1 at 39–40.)  Plaintiff

16  first argues that, as the CRD, it need not prevail on an underlying claim of discrimination in order

17  to prevail on a claim for failure to take all reasonable steps to prevent discrimination.  (*Id.* at 39.)

18  Further, plaintiff argues that it is undisputed on summary judgment that defendant failed to train

19  its employees as to disability discrimination and provided incomplete information in their

20  employee handbook.  (*Id.* at 40.)

21          In its opposition, defendant argues that on summary judgment plaintiff has not presented

22  evidence proving the requisite standard operating procedures.  (Doc. No. 132 at 45.)  Defendant

23  also argues that the purported failure to train and insufficient employee handbook are not

24  sufficient evidence to entitle plaintiff to summary judgment as a matter of law.  (*Id.*)  Finally,

25  defendant argues that there are disputes of fact that persist since all handbooks employed during

26  the relevant time period specifically informed employees of their right to reasonable

27  accommodation and to engage in the interactive process, and defendant informs employees of

28  their rights by making available to employees postings delineating employees' rights to

1    reasonable accommodation and the interactive process.  (*Id.*)  Defendant argues that whether

2    these efforts are reasonable is a question of fact that a trier of fact must resolve.  (*Id.* at 46.)

3    Finally, defendant argues that its vast accommodations apparatus "bends over backwards" to

4    provide an opportunity for employees to keep working.  (*Id.*)

5        Defendant's arguments regarding their handbooks, postings, (DAF ¶ 85), and

6    accommodations apparatus, (*id.* at ¶¶ 1–23), raise a disputed issue of material fact as to whether

7    defendant took all reasonable steps to prevent unlawful conduct.  *See Luckett v. Kohl's Dep't*

8    *Stores, Inc.*, No. 18-cv-02351-JGB-SHK, 2020 WL 4341779, at *4 (C.D. Cal. June 18, 2020)

9    (finding that defendant's arguments that it "took more than reasonable steps to prevent unlawful

10    conduct by implementing EEO policies, prohibiting discrimination, harassment and retaliation,

11    notifying its employees of its policies, and providing for multiple avenue[s] to report and an

12    independent investigation" raised disputes of material fact that rendered summary judgment "not

13    appropriate for either party").

14        Therefore, the court will deny plaintiff's motion for summary judgment in its favor as to

15    plaintiff's claim for failure to take all reasonable steps to prevent discrimination.

16        3.    Fourth Affirmative Defense

17        Plaintiff next argues that it should be granted summary judgment in its favor as to

18    defendant's fourth affirmative defense—the limited scope of the administrative complaint.  (Doc.

19    No. 124-1 at 40–44.)  This affirmative defense seeks to cabin the types of claims plaintiff can

20    bring in this civil action based on the scope of the July 17, 2018 group or class administrative

21    complaint filed by plaintiff in compliance with California Government Code § 12961(a), prior to

22    the commencement of this action.  (*Id.*)  Plaintiff reasons that it is not subject to an exhaustion

23    requirement, and the administrative complaint sufficiently set forth the basis for its investigation

24    of defendant and is reasonably related to the civil complaint.  (*Id.*)

25        In its opposition, defendant argues that disputes of material fact exist because the

26    administrative complaint was conclusory and several of plaintiff's current claims for relief and

27    allegations of defendant's standard operating procedures were not like or reasonably related to the

28    matters alleged in the administrative complaint.  (Doc. No. 132 at 46–48.)

"[C]laims not originally brought in [administrative] verified complaints may nonetheless be brought in subsequently when they are 'like or reasonably related to' the initial allegations." *L. Sch. Admission Council, Inc.*, 896 F. Supp. 2d at 862 (quoting *Rodriguez v. Airborne Express*, 265 F.3d 890, 897 (9th Cir. 2001)).  "[T]he factual allegations of the original [administrative] complaint, rather than the legal theory, establish the proper boundaries of the charge[.]" *Rodriguez*, 265 F.3d at 899.  Here, where plaintiff's administrative complaint alleged disability discrimination, plaintiff's current claims and allegations, which universally concern disability discrimination, are like or reasonably related to the initial allegations.  *L. Sch. Admission Council, Inc.*, 896 F. Supp. 2d at 863 ("In the instant case, each of the Complainants' recitation of the facts in their claims makes quite clear that they wish to challenge LSAC's conduct on the basis of disability discrimination.  That the [administrative] verified complaints received by DFEH did not explicitly identify the ADA as the legal basis of their theories for recovery is not dispositive[.]").

Therefore, plaintiff's motion for summary judgment as to defendant's fourth affirmative defense will be granted.  However, defendant may raise this affirmative defense at trial should plaintiff modify its claims.

### 4.    Conditions Precedent (Seventh Affirmative Defense)

Plaintiff argues that it is entitled to summary judgment as to defendant's seventh affirmative defense—failure to satisfy conditions precedent.  (Doc. No. 124-1 at 44–50.)  In its opposition, defendant explains that its sole basis for this affirmative defense is its argument that plaintiff failed to engage in mandatory dispute resolution procedures prior to filing suit.  (Doc. No. 132 at 48–53.)

Because the court has previously found, both in a prior order and in this order, that pre-suit dispute resolution is not a condition precedent to plaintiff bringing suit, the court will grant plaintiff's motion for summary judgment as to defendant's seventh affirmative defense.

### 5.    Group or Class Complaint (Affirmative Defenses 40–41)

Plaintiff moves for summary judgment in its favor as to defendant's affirmative defenses regarding plaintiff's inability to bring or maintain a group or class complaint.  (Doc. No. 124-1 at 50.)  First, plaintiff argues that it has complied with California Government Code § 12961,

1   regarding group or class administrative complaints and suits, to the extent it is the court's purview

2   to evaluate plaintiff's compliance.  (*Id.* at 50–51.)  Second, plaintiff argues that government

3   enforcement actions are not subject to the requirements of Federal Rule of Civil Procedure 23.

4   (*Id.* at 52–54.)  In its opposition, defendant argues that plaintiff's authority to prosecute its case is

5   constrained by § 12961, which it does not satisfy, and that Rule 23 does apply.  (Doc. No. 132 at

6   53–56.)  Defendant argues that plaintiff has not satisfied the requirements of California

7   Government Code § 12961(a) because CRD has not established an unlawful practice that violates

8   FEHA with respect to any of Grimmway's employees, much less an unlawful practice that

9   affected, in a similar manner, the real parties in interest and the members of the referred group.

10   (*Id.* at 56.)  Defendant further argues that plaintiff also has not demonstrated that it can raise

11   questions of law or fact that are common to the referred group because plaintiff has failed to

12   establish any material commonality between members of the referred group and has failed to

13   present evidence of defendant's purported standard operating procedures.  (*Id.*)

14          A plaintiff satisfies the requirement of § 12961(a) if either (1) "an unlawful practice

15   alleged in a verified complaint adversely affects, in a similar manner, a group or class of persons

16   of which the aggrieved person filing the complaint is a member, or" (2) an "unlawful practice

17   raises questions of law or fact which are common to such a group or class[.]"  Cal. Gov't Code §

18   12961(a); *see also Dep't of Fair Emp. & Hous. v. M&N Fin. Corp.*, 69 Cal. App. 5th 434, 440

19   (2021) ("Thus, section 12961, by its plain terms, does not require the filing of a complaint by an

20   aggrieved person prior to the Department's initiation of a lawsuit" so long as an unlawful practice

21   raises questions of law or fact which are common to a group or class.).

22          The court has already indicated that it will grant summary judgment in plaintiff's favor at

23   the pattern or practice stage of the inquiry as to plaintiff's FEHA discrimination claim premised

24   on defendant's practice of placing referred employees on unpaid leave.  For the same reasons, the

25   court concludes that this undisputed practice is unlawful, which in turn raises questions of law or

26   fact which are common to a group.  Therefore, the court finds that there is at least one unlawful

27   practice, which raises questions of law or fact which are common to a group or class, satisfying

28   the requirements of § 12961(a).

1   Finally, for the same reasons discussed with respect to defendant's motion to deny class

2   certification, the court concludes that the requirements of Rule 23 do not apply to this action.

3   Therefore, the court will grant plaintiff's motion for summary judgment in its favor as to

4   defendant's affirmative defenses 40–41.

5          6.     Laches (Affirmative Defense 34)

6          Plaintiff argues that the defense of laches is not available to it in this action and that even

7   if it were, defendant has presented no evidence on summary judgment of inexcusable delay or

8   affirmative misconduct on the part of plaintiff. (Doc. No. 124-1 at 55–56.)  In its opposition,

9   defendant argues that the defense of laches does apply to this action. (Doc. No. 132 at 56.)

10          The California defense of laches places the burden of proof on the defendant as follows.

11              The party asserting laches bears the burden of production and proof
                on each element of the defense. It is important to remember that, in
12              determining whether laches applies, "[p]rejudice is never presumed;
                rather it must be affirmatively demonstrated by the defendant in
13              order to sustain his burdens of proof and the production of evidence
                on the issue. Generally speaking, the existence of laches is a question
14              of fact to be determined by the trial court in light of all of the
                applicable circumstances . . . ."
15

16   *Highland Springs Conf. & Training Ctr. v. City of Banning*, 244 Cal. App. 4th 267, 282 (2016)

17   (citations omitted); *see also Romans v. Incline Vill. Gen. Improvement Dist.*, 658 F. App'x 304,

18   306 (9th Cir. 2016) (finding that in asserting a defense of laches for purposes of an ADA claim,

19   the defendant "must make a prima facie showing of prejudice") (citation omitted). As such, it is

20   incumbent on the defendant to come forward with evidence in support of this defense and/or to

21   point to a genuine dispute of material fact regarding prejudice in order to avoid summary

22   judgment in plaintiff's favor as to this affirmative defense. *See Washington v. GEO Grp., Inc.*,

23   No. 17-cv-5806-RJB, 2019 WL 2084463, at *4 (W.D. Wash. May 13, 2019), *adhered to on*

24   *denial of reconsideration*, 2019 WL 2224932 (W.D. Wash. May 23, 2019); *see also Devereaux v.*

25   *Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof

26   at trial, the moving party need only point out [through argument] 'that there is an absence of

27   evidence to support the nonmoving party's case.'") (citation omitted). Defendant has not

28   attempted to satisfy that burden here.

48

1    Defendant also argues that the defense of laches will be relevant at the damages phase of

2    the *Teamsters* two-phase framework.  (Doc. No. 132 at 56.)  However, laches is a defense

3    asserted against a "party[.]"  *E.E.O.C. v. Lakemont Homes Inc.*, 718 F. Supp. 2d 1251, 1255 (D.

4    Nev. 2010).  Defendant has offered no support for the notion that the affirmative defense of

5    laches applies to non-party group members "in a public enforcement suit brought by the" CRD.

6    *E.E.O.C. v. Lexus of Serramonte*, No. 05-cv-00962 SBA, 2006 WL 2619367, at *2 (N.D. Cal.

7    Sept. 12, 2006).

8    Therefore, the court will grant plaintiff's motion for summary judgment as to defendant's

9    laches affirmative defense.

10    7.    Clean Hands (Affirmative Defense 35)

11    Plaintiff argues for summary judgment in its favor as to defendant's affirmative defense of

12    unclean hands.  (Doc. No. 124-1 at 56–57.)  Plaintiff reasons that the unclean hands defense is not

13    available in the context of this action and, even if it were, defendant has offered no evidence on

14    summary judgment to support this affirmative defense.  (*Id.*)  In its opposition, defendant merely

15    argues that the unclean hands defense is available in this context.  (Doc. No. 132 at 56.)

16    Under both California and federal law, the defendant bears the burden to prove the

17    affirmative defense of unclean hands.  *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 54 (1996)

18    (California law); *Nat. -Immunogenics Corp. v. Newport Trial Grp.*, No. 15-cv-02034-JVS-JCG,

19    2019 WL 1751837, at *5 (C.D. Cal. Feb. 28, 2019) (federal law).  Regardless of whether the

20    defense of unclean hands applies in this context, defendant has failed to come forward with any

21    evidence on summary judgment in support of its affirmative defense of unclean hands.

22    *Devereaux*, 263 F.3d at 1076.

23    Defendant also argues that the defense of unclean hands will be relevant at the damages

24    phase of the *Teamsters* inquiry, as applied to group members, rather than to plaintiff CRD.

25    However, the "unclean hands defense is asserted against a party," and the individual aggrieved

26    employees are "not a party to this case."  *Lexus of Serramonte*, 2006 WL 2619367, at *2.  Just as

27    with respect to the affirmative defense of laches, defendant "points to no authority to allow the

28    /////

1  unclean hands defense to be asserted against" individual group members "in a public enforcement

2  suit brought by the" CRD.  *Id.*

3      Therefore, the court will grant plaintiff's motion for summary judgment in its favor as to

4  defendant's affirmative defense of unclean hands.

5      8.    <u>Standing (Affirmative Defense 43)</u>

6      Plaintiff contends that it satisfies the requirements to establish its standing and, as such,

7  summary judgment should be granted in its favor as to defendant's affirmative defense asserting

8  that plaintiff lacks standing.  (Doc. No. 124-1 at 57–58.)  In its opposition, defendant argues that

9  plaintiff's standing is constrained by the enabling statute, and there is a dispute of material fact

10  regarding whether plaintiff satisfies the requirements of the enabling statute.  (Doc. No. 132 at

11  57–58) (citing Cal. Gov't Code § 12961(a)) ("If an unlawful practice alleged in a verified

12  complaint adversely affects, in a similar manner, a group or class of persons of which the

13  aggrieved person filing the complaint is a member, or if the unlawful practice raises questions of

14  law or fact which are common to such a group or class, the aggrieved person or the director may

15  file the complaint on behalf and as representative of such a group or class.").  In its reply, plaintiff

16  argues that defendant has identified the wrong statute since § 12961 concerns plaintiff's ability to

17  bring administrative complaints, whereas § 12965 concerns plaintiff's ability to bring civil suits.

18  (Doc. No. 142 at 34.)

19      Assuming for the sake of argument that California Government Code § 12961 does

20  constrain plaintiff's ability to bring civil suits, as discussed above in addressing defendant's

21  affirmative defenses 40 and 41, the court finds that plaintiff has satisfied the requirements of

22  § 12961 based on the undisputed facts before it on summary judgment.  Therefore, the court will

23  grant plaintiff's motion for summary judgment in its favor as to defendant's affirmative defense

24  43.

25                  **CONCLUSION**

26      For the reasons explained above,

27      1.    Plaintiff's request for judicial notice (Doc. No. 155) is GRANTED;

28      2.    Plaintiff's request to seal is GRANTED;

50

1     3.      Defendant's motion to deny class certification or strike class or group allegations

2             (Doc. No. 118) is DENIED;

3     4.      Defendant's motion for summary judgment in its favor (Doc. No. 122) is

4             GRANTED IN PART and DENIED IN PART as follows;

5             a.  Defendant's motion for summary judgment in its favor on plaintiff's claims for

6                 disability discrimination (claim 1), failure to provide reasonable

7                 accommodation (claim 2), and failure to engage in the interactive process

8                 (claim 3) is GRANTED only as to plaintiff's theory of liability based upon the

9                 assertion that defendant failed to consider undue hardship;

10            b.  Defendant's motion for summary judgment in its favor on plaintiff's claims for

11                failure to take all reasonable steps to prevent discrimination, and harassment

12                and retaliation (claims 6–7) is GRANTED only as to any theory of liability

13                based upon the assertion that defendant failed to take reasonable steps to

14                prevent sexual harassment;

15            c.  Defendant's motion for summary judgment in its favor is otherwise DENIED;

16    5.      Plaintiff's motion for summary judgment in its favor (Doc. No. 124) is

17            GRANTED IN PART and DENIED IN PART as follows;

18            a.  Plaintiff's motion for summary judgment in its favor on its claim for disability

19                discrimination under FEHA (claim 1) is GRANTED for purposes of the

20                liability phase of the two-phase framework under *Teamsters* and as to

21                plaintiff's theory of liability premised on the assertion that defendant

22                automatically placed referred employees on unpaid leave;

23            b.  Plaintiff's motion for summary judgment in its favor on defendant's

24                affirmative defenses 4, 7, 34, 35, 40, 41, and 43 is GRANTED;

25            c.  Plaintiff's motion for summary judgment in its favor is otherwise DENIED;

26    6.      This action proceeds as to the following claims:

27            a.  Plaintiff's claim 1 brought under the ADA as predicated on plaintiff's theory

28                of liability based on alleged unpaid leave;

b.  Plaintiff's claims 2–3 brought under the ADA and FEHA as predicated on plaintiff's theory of liability based on alleged unpaid leave;

c.  Plaintiff's claims 1–3 brought under the ADA and FEHA as predicated on plaintiff's theory of liability regarding assistive technology;

d.  Plaintiff's claims 1–3 brought under the ADA and FEHA as predicated on plaintiff's theory of liability regarding reassignment;

e.  Plaintiff's claims 4–5;

f.  Plaintiff's claims 6–7 except as predicated on defendant's alleged failure to take reasonable steps to prevent sexual harassment;

g.  Defendant's affirmative defenses apart from affirmative defenses 4, 7, 34, 35, 40, 41, and 43; and

7.  The parties are directed to meet and confer on their availability for trial, and within fourteen (14) days of the entry of this order, to contact Courtroom Deputy Pete Buzo at (916) 930-4016 or pbuzo@caed.uscourts.gov with their multiple proposed dates for a Final Pretrial Conference and Jury Trial in this action.  Upon receipt of the parties' proposals the court will issue an order rescheduling those dates.

IT IS SO ORDERED.

Dated:   **September 19, 2025**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE