UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CIVIL RIGHTS DEPARTMENT,

Plaintiff,

v.

GRIMMWAY ENTERPRISES, INC.,

Defendant.

No. 2:21-cv-01552-DAD-AC

ORDER GRANTING DEFENDANT'S MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL

(Doc. No. 167)

This matter came before the court on June 10, 2026, for a hearing on defendant's motion to certify this court's September 22, 2025 order for interlocutory appeal. (Doc. No. 167.) At that hearing, attorneys Alexis Michelle Alvarez and Rumduol Vuong appeared on behalf of plaintiff Civil Rights Department. Attorneys Thomas Scott Belden, Tiffany X. Phan, Bradley Jospeh Hamburger, and Jazmine Flores appeared on behalf of defendant Gimmway Enterprises, Inc.

For the reasons explained below, the court will grant defendant's motion to certify this court's September 22, 2025 order addressing the parties' cross motions for summary judgement for interlocutory appeal.

**BACKGROUND**

On August 30, 2021, plaintiff filed its operative complaint in this action in which it asserts the following claims against defendant under the Americans with Disabilities Act ("ADA") and

California's Fair Employment and Housing Act ("FEHA"): (1) disability discrimination in violation of 42 U.S.C. § 12112 and California Government Code § 12940(a); (2) failure to provide reasonable accommodation in violation of 42 U.S.C. § 12112(b) and California Government Code § 12940(m); (3) failure to engage in the interactive process in violation of 42 U.S.C. § 12112(b) and California Government Code § 12940(n); (4) retaliation in violation of 42 U.S.C. § 12203(a) and California Government Code § 12940(h); (5) unlawful interference with rights in violation of 42 U.S.C. § 12203(b); (6) failure to take all reasonable steps to prevent discrimination, harassment, and retaliation (on behalf of the group) in violation of California Government Code §§ 12930(f), 12940(k); and (7) failure to take all reasonable steps to prevent discrimination, harassment, and retaliation in violation of California Government Code §§ 12930(f), 12940(k). (Doc. No. 1 at ¶¶ 39–102.)

On September 22, 2025, the court issued an order granting plaintiff's request for judicial notice (Doc. No. 155), denying defendant's motion to deny class certification (Doc. No. 118), granting in part and denying in part defendant's motion for summary judgement (Doc. No. 122), and granting in part and denying in part plaintiff's motion for summary judgement (Doc. No. 124). (Doc. No. 158.) As noted in the order on summary judgment, over 600 of defendant's employees were referred to defendant's Interactive Process Section between January 1, 2016 and March 1, 2024, and plaintiff seeks to represent a group or class consisting of those employees referred to the Interactive Process Section during this period, with certain exceptions. (*Id.* at 3.) The facts of this case were thoroughly addressed in the court's September 22, 2025 order and the court will not repeat them here. (*Id.*)

On October 31, 2025, defendant moved to certify this court's order (Doc. No. 158) for interlocutory appeal. (Doc. No. 167.) On December 3, 2025, the court stayed the deadlines for opposition and reply briefs regarding defendant's pending motion to certify for interlocutory appeal pursuant to the stipulation of the parties. (Doc. Nos. 169, 170.) On April 21, 2026, the court lifted the stay pursuant to a joint request by the parties following their unsuccessful mediation efforts. (Doc. No. 174.) On May 5, 2026, plaintiff filed its opposition to defendant's motion to certify this court's order for interlocutory appeal. (Doc. No. 175.) On May 19, 2026,

defendant filed its reply in support of its motion to certify. (Doc. No. 176.) That motion came before the court for hearing on June 10, 2026. (Doc. No. 177.)

**LEGAL STANDARD**

The district court may certify an order for interlocutory appeal when it involves "a controlling question of law as to which there is substantial ground for difference of opinion" and "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). If these grounds are not met, the circuit court lacks jurisdiction to hear the matter. *See* 28 U.S.C. § 1291 (granting jurisdiction generally to the circuit courts only over "final decisions" of the district courts); *Couch v. Telescope, Inc.*, 611 F.3d 629, 632–33 (9th Cir. 2010) (noting that the statutory restrictions of 28 U.S.C. § 1292(b) are jurisdictional). This statutory provision "was intended primarily as a means of expediting litigation by permitting appellate consideration during the early stages of litigation of legal questions which, if decided in favor of the appellant, would end the lawsuit . . .." *United States v. Woodbury*, 263 F.2d 784, 787 (9th Cir. 1959). Ultimately, however, the question need not be dispositive of the lawsuit for an interlocutory appeal to be appropriate. *Id.*

Certification of a question for interlocutory appeal requires the district court to find that the following requirements under § 1292(b) are met: (1) there is a controlling question of law; (2) there is substantial ground for difference of opinion about that question of law; and (3) an immediate appeal may materially advance the ultimate termination of the litigation. *Couch*, 611 F.3d at 633. If any of these requirements are not met, then the order certifying the question is jurisdictionally defective. *Id.* Certification of interlocutory appeals is the exception, not the rule, and therefore § 1292(b) "must be construed narrowly." *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1068 n.6 (9th Cir. 2002).

**DISCUSSION**

Defendant moves to certify this court's order on summary judgement for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). (Doc. No. 167.) Defendant argues that the court's determinations regarding application of the framework established by *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977) to this case, and plaintiff's burden of proof are

suitable for an interlocutory appeal.[1] (*Id.*) Defendant posits the following closely related questions for appeal: "(1) whether, as part of the liability phase in a disability-discrimination case, the plaintiff must show evidence of a pattern or practice that discriminated against qualified employees; and (2) whether the plaintiff can establish that pattern or practice by showing that just one qualified employee was discriminated against." (Doc. No. 167 at 14–15.)

In its order on summary judgment, the court determined that a reasonable trier of fact could find that defendant engaged in a pattern or practice of discrimination and that at least one employee was qualified under the ADA.[2] (Doc. No. 158 at 25–31.) In this regard, defendant questions whether the court was required to find that defendant engaged in a pattern or practice of discrimination targeted at qualified employees as defined by the ADA, rather than a broadly discriminatory practice which affected at least one qualified employee. (*Id.*)

**A. Controlling Question of Law**

Defendant argues that the "threshold burden-shifting" questions posed in this case are controlling questions of law. (Doc. No. 167 at 9–10.) Plaintiff concedes that defendant's first

---

[1] Pursuant to *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977), government actions alleging discrimination on behalf of a group or class may be proven by way of a two-phase framework. In the first phase, the government bears the initial burden of making out a *prima facie* case of discrimination, establishing "by a preponderance of the evidence that . . . discrimination was the company's standard operating procedure —the regular rather than the unusual practice." *Id.* at 336. "If an employer fails to rebut the inference that arises from the Government's *prima facie* case, a trial court may then conclude that a violation has occurred and determine the appropriate remedy." *Id.* at 361. "Without any further evidence from the Government, a court's finding of a pattern or practice justifies an award of prospective relief." *Id.* "When the Government seeks individual relief for the victims of the discriminatory practice, a district court must usually conduct additional proceedings after the liability phase of the trial to determine the scope of individual relief." *Id.* These additional, remedial proceedings constitute the second phase of the *Teamsters* two-phase framework.

[2] Specifically, here the court found that a reasonable trier of fact could find from the evidence presented on summary judgment that defendant's following practices qualify as a pattern or practice of disability discrimination under the ADA: (1) automatically placing employees on unpaid leave who were referred to defendant's Interactive Process Section; and (2) failing to consider "acquisition or modification of equipment or devices"—here, assistive technologies. (Doc. No. 158 at 25–29.) In addition, the court found there was a disputed issue of material fact regarding whether defendant engaged in a pattern or practice of failing to give disabled employees priority in reassignment. (*Id.* at 30–31.) The court notes that the parties did not argue that defendant's policies were facially discriminatory.

question, whether plaintiff is required to prove a pattern or practice of discrimination against qualified employees, is a question of law but argues that it is not controlling. (Doc. No. 175 at 6–7.) Plaintiff further argues that defendant's second question, whether proof of discrimination against one qualified employee is sufficient to satisfy the *prima facie* showing requirement, is a question of fact concerning the sufficiency of the evidence presented on summary judgement, not a question of law. (*Id.*) In reply, defendant argues that both questions are controlling questions of law because they determine plaintiff's burden of proof and the standard for establishing causation in this action. (Doc. No. 176 at 11.)

In addressing what constitutes a controlling question of law for purposes of an interlocutory appeal, the Ninth Circuit has explained as follows:

> A controlling question of law must be one of law—not fact—and its resolution must "materially affect the outcome of litigation in the district court." [*In re Cement Antitrust Litig.* (MDL No. 296), 673 F.2d 1020, 1026 (9th Cir. 1981)]; *see also Northwestern Ohio Adm'rs v. Walcher & Fox*, 270 F.3d 1018, 1023 (6th Cir. 2001) ("Because this is an interlocutory appeal, we have no authority to review the district court's findings of fact, but must confine our review to . . . questions of law."); *Clark-Dietz & Assocs.-Eng'rs v. Basic Const.*, 702 F.2d 67, 69 (5th Cir. 1983) ("[F]act-review questions [are] inappropriate for § 1292(b) review.").

*ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022).

As to the first question identified by defendant, whether plaintiff must prove a pattern or practice which specifically discriminated against qualified employees, district courts have found that similar questions regarding the allocation of the burden of proof are controlling questions of law. *See E.E.O.C. v. Bass Pro Outdoor World, LLC*, No. 4:11-cv-03425, 2014 WL 6453606, at *3 (S.D. Tex. Nov. 17, 2014) (determining that "deciding whether the EEOC may use a *Teamsters* model of proof will not require the appellate court to review the factual record or to make factual findings[]" and that allowing an interlocutory appeal on the model of proof may "spare the parties the possibility of a second round of trials"); *Johnson v. Benton Cnty. Sch. Dist.*, 926 F. Supp. 2d 899, 906 (N.D. Miss. 2013) ("This court could likewise go to trial and make its best guess regarding the appropriate causation standard, but it concludes that the law in this circuit would be best served by at least giving the Fifth Circuit an opportunity to clarify the

governing law."); *cf. Larson v. Idaho State Univ.*, No. 1:20-cv-00573-MDH, 2022 WL 2665974, at *5 (D. Idaho July 11, 2022) (declining to certify its summary judgment order for interlocutory appeal because "the only legal issue suggested by ISU's motion is the applicability of the *McDonnell Douglas* [burden of proof] analysis, which the Court considered and found that the facts preclude summary judgment.").

Here, the court granted summary judgment in plaintiff's favor on its claims for disability discrimination under FEHA for purposes of the liability phase of the two-phase framework under *Teamsters* and as to plaintiff's theory of liability premised on the assertion that defendant automatically placed referred employees on unpaid leave. (Doc. No. 158 at 51.) The court's analysis supporting that order first determined that defendant instituted generally discriminatory patterns or practices and then held that at the first phase of *Teamsters*, "the government need only show that one group member has a disability and is a qualified individual under FEHA." (*Id.* at 41–42.) The court's ruling on summary judgement may well have been different had the court determined that the law required plaintiff to show that it was defendant's standard operating procedure to apply the potentially discriminatory practices to qualified employees as defined by the ADA and FEHA.[3] Thus, a different ruling on summary judgement regarding the burden of proof would materially affect the outcome of this litigation. Therefore, the court concludes that the first question posed by defendant is a controlling question of law.

As to the second question raised, defendant's arguments as to why it is a controlling question of law are far from a model clarity. To the extent that defendant questions whether plaintiff presented sufficient evidence on summary judgement to establish a genuine issue of disputed material fact, as plaintiff argues, that question would not be suitable for interlocutory appeal. *See Malbrough v. Crown Equip. Corp.*, 392 F.3d 135, 136 (5th Cir. 2004) ("The underlying issue of whether Malbrough has presented sufficient evidence to show a 'genuine issue . . . [of] material fact', and thus avoid summary judgment under Fed.R.Civ.P. 56(c), is not a

---

[3] As the court noted in its order addressing the parties' motions for summary judgement (Doc. No. 158 at 42), the qualified individual analysis is the same under the ADA and FEHA. *See Ravel v. Hewlett-Packard Enter., Inc.*, 228 F. Supp. 3d 1086, 1096 (E.D. Cal. 2017).

question of law within the meaning of § 1292(b)."); *In re Mayer*, No. 20-cv-01369-TWR-JLB, 2020 WL 6708060, at *4 (S.D. Cal. Nov. 16, 2020) ("Courts routinely conclude, however, that 'whether [an appellant] has presented sufficient evidence to show a genuine issue . . . [of] material fact, and thus avoid summary judgment under Fed. R. Civ. P. 56(c), is not a question of law within the meaning of § 1292(b).'"); *Harris v. Vector Mktg. Corp.*, No. 08-cv-05198-EMC, 2009 WL 4050966, at *2 (N.D. Cal. Nov. 20, 2009) ("[C]ourts have repeatedly stated that § 1292(b) was not meant to apply to cases in which the party opposing summary judgment had raised a genuine issue of material fact[.]").

As noted above, however, the court granted summary judgement in plaintiff's favor as to its first claim for disability discrimination "to the extent that claim is premised on FEHA and California Code of Regulations, Title 2, § 11068(c), and for purposes of the liability phase of the *Teamsters* framework only." (Doc. No. 158 at 42.) By doing so, the court necessarily determined that no reasonable trier of fact could find other than for plaintiff. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). To the extent that defendant argues that the court misapplied the law to the facts established by the undisputed evidence on summary judgment, this question is not be suitable for interlocutory appeal. *See United States v. Wen-Bing Soong*, No. 13-cv-04088-EMC, 2014 WL 988632, at *1 (N.D. Cal. Mar. 10, 2014) (explaining that an argument that the court misapplied the law to the facts is not suitable for interlocutory appeal). However, to the extent that defendant argues that the court made a legal conclusion regarding the showing necessary to shift the burden under *Teamsters*, that question is one suitable for purposes of an interlocutory appeal. *See Juarez v. Jani-King of California, Inc.*, No. 09-cv-03495-SC, 2012 WL 525511, at *1 (N.D. Cal. Feb. 16, 2012) (finding that the court's decision regarding which legal standard to apply when analyzing the showing necessary to establish a *prima facie* case of an employer-employee relationship was a question of law suitable for review on interlocutory appeal); *Wright v. City of San Diego*, No. 24-cv-02089-GPC-BLM, 2025 WL 1746305, at *3 (S.D. Cal. June 24, 2025) (finding that the question of whether certain evidence can be relied upon at all in asserting a *Monell* cause of action is a controlling issue of law).

/////

Regardless of whether the second question identified by defendants is suitable for interlocutory appeal, this court's order on summary judgment poses at least one controlling question of law. The Supreme Court has held that "appellate jurisdiction applies to the order certified to the court of appeals, and is not tied to the particular question formulated by the district court. . . . [T]he appellate court may address any issue fairly included within the certified order because 'it is the order that is appealable, and not the controlling question identified by the district court.'" *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 207 (1996).

**B. Substantial Ground for Difference of Opinion**

Defendant next argues that there is disagreement among federal courts regarding whether individual employee qualifications are properly deferred to phase two of the *Teamsters* framework and whether the *prima facie* showing requirement may be satisfied by a plaintiff based on evidence that at least one qualified employee was discriminated against. (Doc. No. 167 at 15.) Plaintiff argues that the cases cited by defendant in support of its position on this point do not show a substantial ground for difference of opinion because they are limited to private class actions or are otherwise distinguishable. (Doc. No. 175 at 7–12.) Defendant argues in reply that the distinguishing characteristics of the cases it relies upon do not foreclose a finding of substantial ground for difference of opinion. (Doc. No. 176 at 6–7.)

As the Ninth Circuit recently explained:

> The "substantial grounds" prong is satisfied when "novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). For example, this prong is satisfied if "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). However, the district court need not "await[ ] development of contradictory precedent" before concluding that the question presents a "substantial ground for difference of opinion." *Reese*, 643 F.3d at 688.

*ICTSI Or., Inc.*, 22 F.4th at 1130–1131.

/////

/////

1. First Question: Whether Plaintiff Must Prove a Policy or Practice That Discriminates Against Qualified Employees

Defendant reads this court's order on summary judgment as first determining whether a pattern or practice existed and then asking whether there was a single employee unlawfully discriminated against due to that pattern or practice. (Doc. No. 176 at 8.) Defendant's position is that "the entire pattern or practice must be assessed only vis-à-vis qualified employees, not merely through abstract proof of a pattern or practice that then can be traced to one employee." (*Id.*) Plaintiff argues that there is not substantial ground for a difference of opinion as to the appropriateness of the approach taken by this court in its order on summary judgment and attempts to distinguish the cases that defendant has relied upon in support of its argument. (Doc. No. 175 at 9.)

Defendant relies heavily on the Third Circuit's decision in *Hohider v. United Parcel Serv., Inc.*, in which that court concluded that the ADA, not the *Teamsters* framework, "dictates what substantive elements are necessary to reach a determination that [defendant] has engaged in a pattern or practice of unlawful discrimination[.]" 574 F.3d 169, 190 (3d Cir. 2009). The Third Circuit in *Hohider* explained that in that court's view even a "*per se* discriminatory" policy would not give rise to a finding of liability under the ADA "without the statutorily required inquiry into whether those affected by the policy are disabled and able to perform the essential functions of the jobs they seek[.]" *Id.* at 195. Defendant argues that, based on the decision in *Hohider*, a plaintiff can show a pattern or practice of discrimination is prohibited under the ADA only by establishing that the "standard operating procedure" was unlawful "because, as a matter of broader practice, it affected qualified employees." (Doc. No. 176 at 9.) Defendant argues that this court's determination that a potentially unlawful discriminatory pattern or practice existed, and that at least one qualified employee was discriminated against does not satisfy the standard established by the Third Circuit in *Hohider*. (*Id.*)

Plaintiff argues that the decision in *Hohider* is distinguishable because, there class certification was denied pursuant to Federal Rule of Civil Procedure 23, and here the court has determined that Rule 23 is inapplicable because plaintiff is a government entity. (Doc. Nos. 158

at 15; 175 at 8.) However, it is not obvious to the undersigned that the discussion in *Hohider* regarding the showing that a plaintiff must make in support of a pattern-or-practice claim under the ADA is inapposite simply because the plaintiff in a particular case is a government entity. Indeed, the plaintiff in *Teamsters* was a government entity. *See Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 876 n.9 (1984) ("Although *Teamsters* involved an action litigated on the merits by the Government as plaintiff under § 707(a) of the Act, it is plain that the elements of a *prima facie* pattern-or-practice case are the same in a private class action."). While the Third circuit's holding in *Hohider* may be distinguishable for the reasons stated by plaintiff, its discussion is at least informative as to whether there is substantial ground for difference of opinion with respect to defendant's first proposed question.

Nonetheless, Ninth Circuit precedent appears to be at least potentially at odds with the Third Circuit's holding in *Hohider*. The Ninth Circuit has specifically held that the burden-shifting protocol need not be employed when the policy at issue is facially discriminatory. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 988 (9th Cir. 2007) (finding a facially discriminatory policy where the defendant required all drivers to pass a Department of Transportation ("DOT") physical, which required that specific hearing standards be met, even though the DOT only imposed that standard as to individuals driving vehicles of a gross vehicle weight rating of at least 10,001 pounds). Specifically, the Ninth Circuit in *Bates* explained:

> The hearing standard at issue here is a *facially discriminatory* qualification standard because it focuses directly on an individual's disabling or potentially disabling condition. *See, e.g.*, *McGregor v. Nat'l R.R. Passenger Corp.*, 187 F.3d 1113, 1116 (9th Cir.1999) (holding that a policy requiring employees to be "100% healed" or "fully healed" after an injury is facially discriminatory and constitutes a *per se* violation of the ADA). Instead of recognizing this posture, the district court analyzed the claim as a "pattern-or-practice" disparate treatment claim, applying the burden-shifting protocol set out in *Teamsters*. *See* 431 U.S. at 360, 97 S. Ct. 1843.
>
> A burden-shifting protocol is, however, unnecessary in this circumstance. The fact to be uncovered by such a protocol—whether the employer made an employment decision on a proscribed basis (here, disability in the form of hearing impairment)—is not in dispute. *See Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1182–83 (6th Cir.1996) (noting that when a defendant admits to taking account of disability status, the burden-shifting framework sometimes applicable to disparate treatment claims is unnecessary).

*Id.* Later, the Ninth Circuit has explained the holding in *Bates* as follows, "where it is clear that an action was taken because of an impairment or perception of an impairment, no further inquiry or burden-shifting protocol is necessary to establish causation." *Equal Emp. Opportunity Comm'n v. BNSF Ry. Co.*, 902 F.3d 916, 927 (9th Cir. 2018), *as amended* (Sept. 12, 2018) ("*EEOC v. BNSF*").

In this regard their appears to be at least potential tension between the Ninth Circuit's decisions in *Bates* and *EEOC v. BNSF* and the Third Circuit's observation in *Hohider* that "an employer's '100% healed' policy, even if deemed *per se* discriminatory, cannot give rise to a finding of liability and relief under the ADA" without inquiring into whether the affected employees "are disabled and able to perform the essential functions of the jobs they seek or desire with or without reasonable accommodation." 574 F.3d at 195. The decision in *Bates* may also be in tension with the decision in *Harris v. Union Pac. R.R. Co.*, 953 F.3d 1030 (8th Cir. 2020). In *Harris*, the class plaintiffs argued that the defendant's "fitness for duty" policy was facially discriminatory. *Harris*, 953 F.3d at 1032, 1035. However, the Eighth Circuit disagreed that the policy was facially discriminatory, stating:

> [U]nder the plain language of the ADA, the district court cannot determine whether the 'policy itself' constituted a pattern or practice of unlawful discrimination without considering whether the policy is job-related for each of over 650 positions in question and whether the policy is consistent with business necessity in each situation.

*Id.* at 1035. The court in *Harris* further stated that it agreed with the court in *Hohider* that it is necessary to look at the text of the ADA "to assess what elements must be demonstrated for the court to reach, at the first *Teamsters* stage, a determination of unlawful discrimination . . .." *Id.* at 1039 n.5.

Thus, there appears to be at least potential disagreement among the circuits regarding whether a plaintiff must show at *Teamsters* phase one that the individuals affected by a discriminatory policy were unlawfully discriminated against both because they are disabled and qualified, and this court need not "await development of contradictory precedent." *ICTSI Or., Inc.*, 22 F.4th at 1130–1131 (quoting Reese, 643 F.3d at 688). As noted, in *Bates* the Ninth Circuit explained that the *Teamsters* burden shifting protocol is unnecessary when an employer

institutes a facially discriminatory policy. However, where a claim is premised on an employer's engagement in a pattern or practice of discrimination that was not facially discriminatory, the court in *Bates* did not address how the *Teamsters* burden shifting protocol would apply nor did it clarify whether in asserting such a claim the plaintiff must show at phase one that the pattern or practice was directed at employees who were both disabled and qualified. Accordingly, this court concludes that there is substantial ground for difference of opinion regarding whether plaintiff here is required to show a pattern or practice of unlawful discrimination against employees who were disabled and qualified pursuant to the ADA in the first *Teamsters* phase.[4]

2. Second Question: Whether Single-Employee Evidence Is Sufficient

Defendant argues that many courts have held that "evidence of discrimination against one person, or indeed against a handful of people, does not mean that there is a companywide policy of discrimination." (Doc. No. 167 at 20.) Plaintiff argues that the cases relied upon by defendant in advancing this argument are distinguishable, pointing to decisions which support its position that a single qualified employee is sufficient to survive summary judgement on an ADA claim. (Doc. No. 175 at 9–12.)

As noted, defendant argues that plaintiff is required to show a pattern or practice of unlawful discrimination directed at qualified employees by providing evidence of discrimination

/////

[4] Although the parties do not directly address whether the *Teamsters* framework could apply to a pattern and practice ADA claim, there also appears to be a potential for disagreement amongst the circuits as to that question. In both *Hohider* and *Harris* the appellate courts declined to directly address whether the *Teamsters* framework could be applied to such claims and instead merely assumed that the *Teamsters* framework applied and then reversed class certification on Rule 23 grounds. *See Hohider*, 574 F.3d at 182–83 (noting that assuming the *Teamsters* framework could be used "to analyze pattern-or-practice claims brought as private-plaintiff class actions under the ADA, this does not, in itself, resolve whether the class action before us can go forward under the *Teamsters* framework in a manner consistent with Rule 23"); *see also Harris*, 953 F.3d at 1034 ("The parties disagree about whether the district court could use the *Teamsters* framework for an ADA claim. We assume, without deciding, that the district court properly applied the *Teamsters* framework here.") In contrast, the Tenth Circuit has explicitly approved the use of the *Teamsters* framework as to ADA pattern or practice claims. *See Davoll v. Webb* 194 F.3d 1116, 1148 (10th Cir. 1999) ("*Teamsters* sets forth a logical and efficient framework for allocating burdens of proof in pattern and practice employment discrimination suits, and we approve of the district court's use of that framework in this case[,]" which was brought pursuant to the ADA.).

against more than one employee.[5] If one adopts that position, then defendant has identified cases that do provide some support for its argument that single-employee evidence is insufficient to establish such a pattern or practice. For example, in *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1229 (11th Cir. 2001), the court found that the plaintiff had presented insufficient evidence of a pattern or practice of age discrimination because, to the extent age discrimination was occurring, it was limited to a single supervisor and was not the company's standard operating procedure. Likewise, the Supreme Court has explained that "a class plaintiff's attempt to prove the existence of a companywide policy, or even a consistent practice within a given department, may fail even though discrimination against one or two individuals has been proved." *Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 878 (1984). In addition, the Supreme Court explained in *Teamsters* that because the government "alleged a systemwide pattern or practice of resistance to the full enjoyment of Title VII rights, the Government ultimately had to prove more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts. It had to establish by a preponderance of the evidence that racial discrimination was the company's standard operating procedure—the regular rather than the unusual practice." 431 U.S. at 336. Here, the court found on summary judgment that plaintiff had presented evidence that at least one employee who was subjected to the discriminatory policy was also qualified as defined by the ADA. (Doc. No. 158 at 21–22, 41–42.) Defendant argues that, based on the above-cited cases upon which it relies, such evidence would have been insufficient to entitle plaintiff to summary judgment had the court instead required plaintiff to show a pattern or practice of discrimination directed at qualified employees.

Plaintiff argues in opposition that several courts have addressed the burden on government plaintiffs in pattern or practice discrimination cases and have agreed that "a government plaintiff does not have to prove all victims were qualified individuals with a disability to show the existence of a discriminatory policy that was the standard operating procedure at the liability phase of the *Teamsters* framework." (Doc. No. 175 at 11.) This court relied on many of these

---

[5] It does not appear that defendant has taken a firm position as to how many employees must be the subject of this showing as part of the liability phase in a disability-discrimination case.

same cases in its summary judgement order. For example, in *E.E.O.C. v. J.B. Hunt Transp., Inc.*, 128 F. Supp. 2d 117, 125 (N.D.N.Y. 2001), *aff'd*, 321 F.3d 69 (2d Cir. 2003), the district court acknowledged that, to survive summary judgement, the EEOC need not "prove that each and every class member herein was the victim of discrimination prohibited by the ADA—that is, a 'qualified' individual with a disability or an individual perceived as having a disability—, it must show that at least some of the purported class members are such persons." There, the court found that there was no evidence on summary judgment "that even one" of the claimants the EEOC was representing "was either disabled, regarded as disabled or had a record of disability as contemplated by the ADA." *Id.* at 136. However, the Ninth Circuit has not expressly ruled on whether evidence of discrimination against a single, qualified employee would be sufficient to show a pattern or practice of discrimination under the ADA. *Cf. Bates*, 511 F.3d at 994 (vacating and remanding the district court's order because it did not consider the qualifications of the named plaintiff nor the proffered substitute named plaintiff without suggesting that more than one qualified employee was necessary in order for plaintiff to satisfy its burden where the defendant had instituted a facially discriminatory policy).

Based upon the decisions discussed above, this court concludes that there is substantial ground for difference of opinion regarding whether plaintiff here is required to come forward on summary judgment with evidence of unlawful discrimination for more than one employee in a pattern or practice suit where the pattern or practice at issue is not facially discriminatory.

**C. Materially Advance the Litigation**

Defendant argues that in this case the "threshold burden-shifting" questions should be decided before trial because misallocating the burden on "core qualification issues" would require additional, protracted litigation and a new trial post-appeal. (Doc. No. 167 at 9–10.) Plaintiff argues that even if the Ninth Circuit were to agree with defendant, an interlocutory appeal would not end this lawsuit or result in a significantly different trial of this action. (Doc. No. 175 at 13.) Defendant contends in reply that knowing the correct burden of proof and its allocation will materially advance this litigation and avoid the conducting of a trial employing an incorrectly allocated burden. (Doc. No. 176 at 15–18.)

As noted, for this court to certify its order for interlocutory appeal, the resolution of the question must materially advance the litigation. This standard is satisfied if the resolution "'may appreciably shorten the time, effort, or expense of conducting' the district court proceedings." *ICTSI Or., Inc.*, 22 F.4th at 1131.

In light of the approximately 600 individuals whose claims may need to be evaluated pursuant to the two-phase *Teamsters* framework during a jury trial, it is apparent that clarity as to the correct burden of proof prior to the commencement of trial will save the court and the parties substantial time, effort, and expense. *See Sterling v. Feek*, 150 F.4th 1235, 1247 (9th Cir. 2025) ("Reviewing the question at this juncture would also resolve an issue fundamental to Sterling's individual claims and clarify which putative class members are eligible for relief."); *Moriarty v. Am. Gen. Life Ins. Co.*, No. 3:17-cv-01709-JO-WVG, 2023 WL 6280967, at *3 (S.D. Cal. Sept. 26, 2023) (certifying the court's order on summary judgement for interlocutory appeal in part because immediate appellate review would avoid "protracted and expensive litigation" on the plaintiff's motion for class certification).

**CONCLUSION**

Accordingly,

1. Defendant's motion for certification for interlocutory appeal (Doc. No. 167) is GRANTED;
2. The undersigned certifies for interlocutory appeal its September 22, 2025 order granting in part and denying in part the parties' motions for summary judgement (Doc. No. 158);
3. This case is stayed pending the interlocutory appeal; and

/////

/////

/////

/////

/////

/////

4. If the United States Court of Appeals for the Ninth Circuit declines to accept the interlocutory appeal, the parties are ordered to notify the court within ten days of that determination.

IT IS SO ORDERED.

Dated: **September 16, 2026**

Dale A. Drozd

DALE A. DROZD
UNITED STATES DISTRICT JUDGE